**Merritt DICKSTEIN, Plaintiff**

v.

**Edmond duPONT et al., as they are the partners of Francis I. duPont & Co., Defendants.**

**Civ. A. No. 70–400–M.**

United States District Court,
D. Massachusetts.

Dec. 8, 1970.

David S. Mortensen, C. Keefe Hurley, Earle C. Cooley, Hale & Dorr, Boston, Mass., for plaintiff.

James C. Heigham, Choate, Hall & Stewart, Boston, Mass., for defendants.

## MEMORANDUM

FRANK J. MURRAY, District Judge.

This case came to be heard upon defendants' motion to stay proceedings pursuant to 9 U.S.C. § 3,[1] and upon plain-

1. 9 U.S.C. § 3 provides:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, *shall on application of one of the parties stay the trial* of the action until such arbitration has been had in accordance with the terms of the agreement, *providing the applicant for the stay is not in default in proceeding with such arbitration.* (Emphasis added.)

tiff's motion to stay the arbitration. This is a diversity action in contract brought against all the partners of Francis I. duPont & Co. (duPont), a member firm of the New York Stock Exchange (NYSE), by Dickstein, a former "account executive" for duPont. In his complaint he alleges the defendants failed to pay him a fair and reasonable "finder's fee" for procuring a customer for defendants' services. The defendants have moved that all the proceedings be stayed until the matter is settled according to the arbitration procedures of NYSE as required in the "Application for Approval of Employment" (NYSE Form No. RE–1),[2] executed by the plaintiff as a condition of his employment.[3] The court rejects all of plaintiff's objections to the stay and will comment on several in this memorandum.

■ The plaintiff contends his employment with defendants was that of a worker engaged in foreign or interstate commerce and thus excluded from the arbitration requirements of 9 U.S.C. § 1.[4] But as an account executive, plaintiff was not "engaged in the movement of interstate or foreign commerce or in work so closely related thereto as to be in practical effect part of it".[5]

■ Although his duties were not those of a "worker" within the meaning of 9 U.S.C. § 1, defendants, nevertheless, must show that plaintiff's employment with defendants was under or in pursuance of "a contract evidencing a transaction involving commerce", as required by section 2 of 9 U.S.C.[6] This requirement is satisfied if plaintiff's employment contract involved work "'in' commerce, * * * producing goods for commerce, or * * * engaging in activity that affected commerce". Bernhardt v. Polygraphic Co., 350 U.S. 198, 201, 76 S.Ct. 273, 100 L.Ed. 199 (1956). Unlike the local supervisory duties in the *Bernhardt* employment contract,[7] Dick-

2. Paragraph 34(j) of this application stated:

 I agree that any controversy between me and any member or member organization or affiliate or subsidiary thereof arising out of my employment or the termination of my employment shall be settled by arbitration at the instance of any such party in accordance with the arbitration procedure prescribed in the Constitution and rules then obtaining of the New York Stock Exchange.

3. NYSE Rule 345(a) provides that no member firm shall:
 (1) permit any person to perform regularly the duties customarily performed by a registered representative, unless such person shall have been registered with and is acceptable to the Exchange, * * *.

4. 9 U.S.C. § 1 provides:
 "*Maritime transactions*", as herein defined, means charter parties, bills of lading of water carriers * * *; "commerce", as herein defined, means commerce among the several States or with foreign nations, * * * *but nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce.*
 (Emphasis added.)

5. Tenney Engineering v. United Electrical R. & M. Wkrs., Local 437, 207 F.2d 450, 452 (3rd Cir. 1953); *accord*, Signal-Stat Corp. v. Local 475, United Electrical R. & M. Wkrs., 235 F.2d 298, 303 (2d Cir. 1956), cert. denied 354 U.S. 911, 77 S.Ct. 1293, 1 L.Ed.2d 1428 (1957). *See also* Bernhardt v. Polygraphic Co., 218 F.2d 948, 951–952 (2d Cir. 1955), rev'd on other grounds 350 U.S. 198, 76 S.Ct. 273, 100 L.Ed. 199 (1956) (construction of the term "worker").

6. 9 U.S.C. § 2 provides:
 *A written provision* in any maritime transaction or *a contract evidencing a transaction involving commerce to settle by arbitration* a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, *shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.*
 (Emphasis added.)

7. Bernhardt v. Polygraphic Co., 218 F.2d 948, 949 (2d Cir. 1955) (terms of the contract).

stein's duties, as an account executive, contemplated that he would be free to find prospective customers for defendants' services anywhere, and not within the confines of a designated State. Defendants' business was conducted in many states, utilizing interstate facilities. What was expected of plaintiff when he entered defendants' employ, and assuredly what plaintiff himself expected, is that in performing his duties he would either travel to or reach out for prospective customers of defendants wherever they might be found. Such activity clearly contemplated use of interstate travel or communication facilities whenever necessary to find the prospect and was thus an activity that affected commerce. *See* Prima Paint v. Flood & Conklin, 388 U.S. 395, 401, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); Hilti, Inc. v. Oldach, 392 F.2d 368, 371 n. 6 (1st Cir. 1968). In passing it is observed that the prospective customer for which plaintiff claims a finder's fee in this action is a Maine corporation, also engaged in business in other New England States and New York. The court concludes the employment contract falls within section 2 as one evidencing a transaction affecting interstate commerce.

■■■■ The plaintiff also argues that the stay should be refused because the NYSE Form RE–1 violates the Sherman Act, 15 U.S.C. §§ 1 and 2,[8] and thereby constitutes grounds "for the revocation of [the] contract", as provided by 9 U.S.C. § 2.[9] Resolution of this claim of illegality is a matter for this court and not the arbitrators. American Safety Equipment Corp. v. J. P. Maguire & Co., 391 F.2d 821 (2d Cir. 1968); *cf*. Wilko v. Swan, 346 U.S. 427, 74 S.Ct. 182, 98 L.Ed. 168 (1953). Plaintiff does not contend that NYSE approval of employment in itself violates the Sherman Act, but does assert that conditioning the approval upon an employee's consent to arbitration tends to restrain trade and monopolize commerce among the several states. Stock exchanges stand in a somewhat favored position relative to the Sherman Act. They have been given a broad self-regulatory grant of authority under the Securities Act of 1934, 15 U.S.C. § 78a et seq.; and though their activities are not wholly exempt from the antitrust regulations, yet they enjoy freedom from the strictures of the Sherman Act within the scope of the self-regulatory grant. *See* Silver v. New York Stock Exchange, 373 U.S. 341, 83 S.Ct. 1246, 10 L.Ed.2d 389 (1963) (antitrust violation might be "justified" and, hence, unenforceable, if the Exchange's activity fell within the scope and self-regulatory purposes of the Securities Act of 1934).[10] It is not readily apparent that duPont's requirement of submission to arbitration, as a condition of employment approval, would result in "undue" and "unreasonable" restraint of competition in the brokerage business.[11] But if

---

8. 15 U.S.C. § 1 provides, in pertinent part:
   Every contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal * * *.
   15 U.S.C. § 2 provides:
   Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a misdemeanor * * *.

9. *See* note 6 *supra*.

10. The *Silver* court held that "[t]he entire public policy of self-regulation, beginning with the idea that the *Exchange may set up barriers to membership*, contemplates that the Exchange will engage in restraints of trade which might well be unreasonable absent sanction by the Securities Exchange Act". 373 U.S. at 360, 83 S.Ct. at 1258. (Emphasis added.)

11. *See generally*, Standard Oil Co. v. United States, 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619 (1910) (establishing the "rule of reason"); United States v. American Tobacco Co., 221 U.S. 106, 31 S.Ct. 632, 55 L.Ed. 663 (1910); Lawson v. Woodmere, 217 F.2d 148 (4th Cir. 1954).

such restraint be assumed, the requirement of submission to arbitration of disputes arising out of an employment contract pursuant to an Exchange's rules and regulations already approved by the Securities and Exchange Commission [12] does not derogate from the self-regulatory grant of the Securities Act. It has not been shown that the Sherman Act was violated.

Finally, plaintiff claims the stay should be limited to the trial only. The language of 9 U.S.C. § 3 [13] specifically authorizes the court to "stay the trial". However, stay orders have been applied to "actions" [14] and "proceedings", [15] and it has been held that the overall purpose of the Arbitration Act is not merely to expedite the resolution of disputes, but also to avoid delay and the expenses of litigation.[16]

■ Accordingly, the defendants' motion to stay all the proceedings in this action pending the decision of the arbitration board is granted. Plaintiff's motion to stay arbitration is denied.

12. Section 78f of 15 U.S.C. requires an exchange to file with the Securities and Exchange Commission:

> Such data as to its organization, rules or procedure, and membership, and such other information as the Commission may * * * require * * * [and] [c]opies of its constitution, articles of incorporation with all amendments thereto, and of its existing bylaws or rules or instruments corresponding thereto, * * *
>
> *     *     *     *     *
>
> If * * * the exchange * * * is so organized as to be able to comply with the provisions of this chapter and the rules and regulations thereunder and the rules of the exchange are just and adequate to insure fair dealing and to protect investors, * * * [then such exchange may be] registered as a national securities exchange.

13. *See* note 1 *supra.*

14. Bernhardt v. Polygraphic Co., 350 U.S. 198, 200, 76 S.Ct. 273, 100 L.Ed. 199 (1956).

15. Ross v. Twentieth Century-Fox Film Corp., 236 F.2d 632, 633 (9th Cir. 1956) ; Agostini Bros. Bldg. Corp. v. United States ex rel. Virginia-Carolina Elec. Works, Inc., 142 F.2d 854, 855–856 (4th Cir. 1944) ; Brown v. Gilligan, Will & Co., 287 F.Supp. 766, 770 (S.D.N.Y. 1968).

16. Wilko v. Swan, 346 U.S. 427, 431, 74 S.Ct. 182, 98 L.Ed. 168 (1953). *Contra,* Donahue v. Susquehanna Collieries Co., 49 F.Supp. 843, 844 (M.D.Pa.1943), rev'd on other grounds 138 F.2d 3, 5 (3rd Cir. 1943).