RUSHTON v MEIJER, INCORPORATED (ON REMAND)

Docket No. 199684. Submitted December 9, 1996, at Lansing. Decided August 19, 1997, at 9:25 A.M. Leave to appeal sought.

Christine M. Rushton brought an action in the Genesee Circuit Court against Meijer, Incorporated, alleging wrongful discharge, gender discrimination, and retaliation. The plaintiff had been employed by the defendant as a part-time floor detective. When the plaintiff was hired, she agreed to abide by the defendant's policies and procedures and acknowledged receipt of an associate handbook, in which there was a provision that required that employees who were terminated follow the alternative dispute resolution (ADR) procedure set forth in the handbook before seeking any judicial remedy. When the plaintiff was terminated from her employment, she invoked the ADR procedure, indicating that she believed that she had been terminated without just cause, that she was the victim of gender discrimination, and that her termination had been in retaliation for her complaining about not being given a full-time job. Following an investigation, the plaintiff's termination was upheld. Rather than pursue the next step in the ADR procedure, which was binding arbitration, the plaintiff commenced her action in the circuit court. The defendant moved for summary disposition on the basis of the plaintiff's failure to complete the alternative dispute resolution procedure. Following the plaintiff's withdrawal of her retaliation claim, the court, Valdemar L. Washington, J., denied defendant's motion for summary disposition of the wrongful discharge and gender discrimination claims. The defendant appealed by leave granted. The Court of Appeals, FITZGERALD, P.J., and TAYLOR and HOLBROOK, JR., JJ., relying on the holding in *Heurtebise v Reliable Business Computers, Inc*, 207 Mich App 308 (1994), as controlling precedent for the proposition that private agreements to arbitrate civil rights claims are enforceable, reversed the order of the trial court that denied summary disposition with respect to both the wrongful discharge and the gender discrimination claims. Unpublished memorandum opinion of the Court of Appeals, issued March 1, 1995 (Docket No. 164272). The plaintiff sought leave to appeal to the Supreme Court, which remanded the matter to the Court of Appeals for reconsideration in light of *Heurtebise v Relia-*

*ble Business Computers, Inc,* 452 Mich 405 (1996). 453 Mich 943 (1996).

On remand, the Court of Appeals *held*:

1. The Supreme Court in *Heurtebise* reversed the decision of the Court of Appeals in that case because the employee handbook contained language demonstrating that the employer did not intend to be bound by the provisions set forth in the handbook, in that the handbook stated that the policies contained therein did not create any employment or personal contract, that the employer retained the right to terminate any employee at any time for any reason, and that the employer retained the right to change any and all of the policies set forth in the handbook.

2. Unlike the employee handbook in *Heurtebise,* the defendant's employee handbook in this case does not contain any language suggesting that the defendant does not intend to be bound by the provisions in the handbook or that the defendant does not consider that those policies result in employment that can be terminated only for just cause. Although the defendant's handbook reserves to the defendant the right to modify or delete existing policies that are set forth in the handbook, it is clear that the defendant intended to be bound by the policies set forth in the handbook until such time that it exercises, with adequate notice to its employees, the reserved right to modify those policies. Because the defendant made no changes to the policies set forth in the handbook before the plaintiff instituted her action, both the plaintiff and the defendant are contractually bound by those provisions.

3. Because the provisions of the defendant's employee handbook clearly require that a terminated employee pursuing a breach of contract claim first exhaust the nonjudicial remedies set forth in the ADR procedure, including the submission of the matter to binding arbitration, and because contractual provisions requiring the submission of claims of breach of contract to binding arbitration have been held to be valid and enforceable, the plaintiff's failure to proceed with the remedies under the ADR procedure of the employee handbook with respect to the wrongful discharge claim barred her pursuit of that claim in the circuit court. Accordingly, the trial court erred in failing to grant summary disposition for the defendant with respect to the wrongful discharge claim.

4. Section 803 of the Civil Rights Act, MCL 37.2803; MSA 3.548(803), expressly prohibits any requirement that a person asserting a right under that act first exhaust any nonjudicial remedies before seeking legal or equitable remedies in a court of this state. Accordingly, any provision in an employment contract that presumes to require that an employee who has a claim arising

under the provisions of the Civil Rights Act first exhaust any nonjudicial remedies is contrary to public policy and unenforceable. Accordingly, the plaintiff was not required to proceed with the nonjudicial remedies set forth in the employee handbook rather than seeking a judicial remedy of her gender discrimination claim by the filing of a complaint in the circuit court, and the trial court properly refused to grant summary disposition for the defendant with respect to the claim of gender discrimination.

5. Because the plaintiff's employment as a store detective did not directly involve or affect interstate commerce, the federal arbitration act, 9 USC 1 *et seq.*, is inapplicable to this matter, even though the defendant's general business might involve interstate commerce.

Affirmed in part, reversed in part, and remanded.

TAYLOR, J., concurring in part and dissenting in part, stated that not only did the trial court err in refusing to grant summary disposition for the defendant with respect to the wrongful discharge claim, but also erred in refusing to grant summary disposition with respect to the gender discrimination claim because there is no binding authority to compel the conclusion that parties may not before a dispute arises contractually decide to submit any dispute that might arise under the Civil Rights Act to binding arbitration as the means of resolving the dispute. The provision of the Civil Rights Act upon which the majority primarily relies, MCL 37.2803; MSA 3.548(803), provides only that the Civil Rights Act does not diminish the right of a person to seek preexisting common-law and statutory legal and equitable rights in the courts of this state and is silent with respect to the question whether parties can contractually adopt binding arbitration as the means of resolving a dispute arising under the Civil Rights Act. In the face of that silence, a predispute agreement to arbitrate such disputes is consistent with state statutory law concerning arbitration and is valid and enforceable.

1. CONTRACTS — EMPLOYMENT CONTRACTS — EMPLOYEE HANDBOOKS — INTENTION TO BE BOUND.

An employer's indication that it intends to be bound by the policies and procedures set forth in its employee handbook creates a valid employment contract binding both the employer and the employee to the provisions contained in the handbook even where the employer has reserved an unexercised right to amend or delete existing policies contained in the handbook.

2. ARBITRATION — EMPLOYMENT CONTRACTS — BREACH OF CONTRACT — AGREEMENT TO ARBITRATE.

An employer and an employee in an employment contract may validly agree that any dispute involving a breach of that contract be submitted to binding arbitration as the means of resolving the dispute.

3. ARBITRATION — CIVIL RIGHTS ACT — EMPLOYMENT CONTRACTS — AGREEMENT TO ARBITRATE — PUBLIC POLICY.

An agreement in an employment contract requiring any subsequent dispute involving a claim arising under the Civil Rights Act to be submitted to binding arbitration is contrary to the express provisions of that act and is unenforceable as a matter of public policy (MCL 37.2803; MSA 3.548[803]).

*Wascha & Waun, P.C.* (by *Thomas W. Waun*), for the plaintiff.

*Jeffrey A. Rueble* and *Miller, Canfield, Paddock and Stone* (by *Charles S. Mishkind* and *Diane M. Soubly*), for the defendant.

Amici Curiae:

*Dickinson, Wright, Moon, Van Dusen & Freeman* (by *John Corbett O'Meara, Thomas G. Kienbaum,* and *Noel D. Massie*), for American Society of Employers and others.

ON REMAND

Before: FITZGERALD, P.J., and TAYLOR and HOLBROOK, JR., JJ.

HOLBROOK, JR., J. This case is on remand to us from the Michigan Supreme Court, 453 Mich 943 (1996), for reconsideration in light of *Heurtebise v Reliable Business Computers, Inc,* 452 Mich 405; 550 NW2d 243 (1996). We reverse in part and affirm in part.

As we stated in our earlier opinion:

Plaintiff worked as a part-time floor detective for defendant Meijer, Incorporated. When she was hired by Meijer, plaintiff signed an employment form agreeing to abide [by]

defendant's policies and procedures. Plaintiff acknowledged
receipt of an associate handbook which included defend-
ant's termination appeal procedure. This document unam-
biguously provided that terminated employees were
required to exhaust the alternate dispute resolution (ADR)
procedure. A separate document which plaintiff received
indicated that exhaustion of the ADR procedure is a condi-
tion precedent to litigation, regardless of whether the arbi-
trator's final decision is upheld by a trial court.

When defendant terminated plaintiff's employment, she
[plaintiff] invoked the ADR procedure. She indicated that she
believed she had been discharged without just cause, that
she was the victim of gender discrimination, and that she
had been retaliated against for complaining about not being
given a full-time job. Following an investigation, plaintiff's
discharge was upheld at step one of the ADR procedure.
Plaintiff chose not to pursue the next step in the procedure,
binding arbitration, and instead filed a lawsuit alleging
wrongful discharge, gender discrimination, and retaliation.
Defendant moved for summary or partial disposition, or for
an order enforcing the ADR award or procedure. At the hear-
ing on defendant's motion, plaintiff withdrew her retaliation
claim. The court then denied defendant's motion for sum-
mary disposition of the wrongful discharge and gender dis-
crimination claims. [*Rushton v Meijer, Inc,* unpublished
memorandum opinion of the Court of Appeals, issued
March 1, 1995 (Docket No. 164272).]

In our original opinion, we reversed the trial court's
denial of a defense motion for summary disposition
of plaintiff's wrongful discharge and gender discrimi-
nation claims because plaintiff had failed to exhaust
the remedies available to her pursuant to the ADR pro-
cedure that defendant had established to resolve such
claims. In reversing the trial court's denial of defend-
ant's motion for summary disposition of plaintiff's
gender discrimination claim, we relied on *Heurtebise
v Reliable Business Computers, Inc,* 207 Mich App
308; 523 NW2d 904 (1994), as controlling precedent

for the proposition that private agreements to arbitrate civil rights claims are enforceable.

I

The Michigan Supreme Court reversed this Court's decision in *Heurtebise*, because the employee handbook contained language demonstrating that the employer did not intend to be bound by its provisions. 452 Mich 414. As the Supreme Court noted, the handbook in *Heurtebise* contained clauses stating: (1) the policies in the handbook do not create any employment or personal contract, express or implied; (2) the employer had the right to terminate employees' employment at any time, without notice, for any reason; and (3) the employer reserved the right to make modifications to any or all of the policies in the handbook. Thus, the instrument in *Heurtebise* expressly disclaiming contract status, yielding the employee no benefit above the minimal required status even to be an employee—namely, at-will status—and having provisions that could be changed unilaterally by the employer was, as might be expected, determined not to be a contract by the Supreme Court.

It is in light of this holding that we are directed to reexamine the Meijer employee handbook. The dissimilarities are marked. Unlike the *Heurtebise* handbook, the Meijer handbook does not contain language stating that Meijer does not intend to be bound by its provisions. Further, it does not indicate that Meijer considers the policies not to create a contract and, finally, rather than an at-will termination policy, this instrument has consideration running to the employee in the form of an express promise of termination

from employment only for just cause. Were this the extent of the provisions of the Meijer handbook, we could easily discern its determinative distinctions from the *Heurtebise* booklet and find it to be a contract binding on both parties. There is, however, reservation language in the Meijer handbook stating that the existing policies may be "modified or deleted" by the employer. This reservation clause, plaintiff argues, would allow all or part of the contractual provisions to be deleted and means that the instrument here at issue, just as the one in *Heurtebise*, is no contract at all.

This argument has some allure, but on serious scrutiny, the problem plaintiff points to is illusory in the factual circumstances found here. It must be recalled that this instrument is an agreement to control an ongoing course of conduct between the employer and its employees. By its clear terms, they are both bound by it unless and until the employer chooses to change it. Even then, the employer cannot retroactively escape from its requirements. Any change can only take effect prospectively. See *In re Certified Question*, 432 Mich 438, 441; 443 NW2d 112 (1989). Accordingly, because the alleged improper acts by the employer at issue here came before any change was made in the agreement by the employer (in fact, as far as we know, even *now* no changes have been instituted by the employer), both parties are bound. In particular, the parties are bound to utilize the exclusive ADR procedure for handling their contract dispute. While the reservation language in the handbook will allow Meijer, for example, to change its policy of being a just-cause employer to become an at-will employer, the change would be effective only

from the time of the implementation of the change (and after reasonable employee notification). Until such a change is made (which might cause the new arrangement to run afoul of the *Heurtebise* holding), Meijer is bound by the handbook in its dealing with its employees. Indeed, any other conclusion would mean that an employer could never change its employment agreements with its employees. Once a just-cause employer would mean always a just-cause employer. No employer would be likely to choose voluntarily to be so bound, and, thus, plaintiff's position, if adopted, would have the unfortunate and surely undesirable consequence of discouraging the practice of granting employees just-cause termination protection. Moreover, if an employer should cavalierly eliminate provisions that restrict its options in dealing with its employees, arbitrability could be jeopardized under *Heurtebise*, and valued employees, the retention of whom no doubt prompted the adoption of the just-cause policy in the first place, might choose to leave the employer. *Rood v General Dynamics Corp*, 444 Mich 107, 137-141; 507 NW2d 591 (1993). This economic regulation of the employment marketplace will undoubtedly cause an employer to exercise caution before making any change in the employment relationship, just as conditions of the employment market no doubt were factors considered in the granting of just-cause termination status in this case.

Therefore, because the Meijer and *Heurtebise* handbooks are distinguishable, this plaintiff was bound by the handbook with regard to any contractual claim. The fact that Meijer could later change the agreement does not vitiate the fact that, as things currently stand, these parties are contractually bound. Accord-

ingly, Meijer can, consistent with prior case law, require employees to arbitrate contract disputes regarding adverse employment decisions. See, e.g., *Toussaint v Blue Cross & Blue Shield of Michigan*, 408 Mich 579, 624; 292 NW2d 880 (1989). Because plaintiff failed to pursue her breach of contract claim utilizing the required ADR procedure, she is barred from pursuing such a claim in the circuit court. *Renny v Port Huron Hosp*, 427 Mich 415, 429-430; 398 NW2d 327 (1986); *Zeniuk v RKA, Inc*, 189 Mich App 33, 35, 37-38; 472 NW2d 23 (1991). Accordingly, we reverse the trial court's order denying defendant's motion for summary disposition of this claim.

II

With regard to plaintiff's gender discrimination claim, we conclude, in light of *Heurtebise*, that summary disposition was properly denied by the trial court. To this end, we agree with and adopt as our own the reasoning of Justice CAVANAGH in parts III through VI of his opinion in *Heurtebise*, which addressed, albeit in dicta, the issue "whether private employers *can* require employees, as a condition of employment, to waive prospectively their right to pursue civil rights claims in a judicial forum."[1] 452 Mich 414.

As noted by Justice CAVANAGH in *Heurtebise*, "[u]nlike federal law, Michigan has an unwavering history of faithfully defending an aggrieved individual's

---

[1] Justices LEVIN and MALLETT concurred with Justice CAVANAGH. Justice BOYLE, concurring separately, expressed no opinion "whether or when an agreement to arbitrate might be found to be enforceable." 452 Mich 438. Chief Justice BRICKLEY and Justices RILEY and WEAVER concurred with Justice BOYLE.

right to a judicial forum to remedy unlawful discrimination." 452 Mich 414. This unwavering history is currently reflected in the judicial remedies clause of Const 1963, art 5, § 29, as well as its legislative counterpart, MCL 37.2803; MSA 3.548(803). Article 5, § 29 of our state constitution establishes a civil rights commission with certain powers and responsibilities, and incorporates a judicial remedies clause: "Nothing contained in this section shall be construed to diminish the right of any party to direct and immediate legal or equitable remedies in the courts of this state." Similarly, our Legislature in § 803 of the Civil Rights Act has reinforced and broadened the constitutional right of Michigan's citizens to immediate and direct judicial review of a civil rights claim: "This [civil rights] act shall not be construed to diminish the right of a person to direct or immediate legal or equitable remedies in the courts of this state." Justice CAVANAGH aptly concluded that § 803 "expressly prohibits an exhaustion of administrative remedies requirement." 452 Mich 420.

Michigan's declared public policy entitling a state civil rights plaintiff to direct and immediate review of such claims in the circuit court cannot be abrogated by contract:

> A contract which is contrary to public policy is illegal and void. *Federoff v Ewing*, 386 Mich 474, 481; 192 NW2d 242 (1971). Public policy has been described as "the community common sense and common conscience, extended and applied throughout the State to matters of public morals, public health, public safety, public welfare, and the like." *Skutt v Grand Rapids*, 275 Mich 258, 264; 266 NW 344 (1936). It is expressed in the constitution, statutes, judicial decisions, or customs and conventions of the people, and it concerns the primary principles of equity and justice. *Id.*

[*Badon v General Motors Corp*, 188 Mich App 430, 439; 470 NW2d 436 (1991).]

Contrary to defendant Meijer's argument, we do not find the parties' employment contract to be governed by the federal arbitration act (FAA), 9 USC 1 *et seq.*[2] In *Bernhardt v Polygraphic Co of America, Inc*, 350 US 198, 200-201; 76 S Ct 273; 100 L Ed 199 (1956), Bernhardt, a New York resident, was hired by Polygraphic, a New York corporation, to be the superintendent of its lithographic plant in Vermont. Under the terms of the parties' employment contract (which contained an arbitration clause), Bernhardt "was to perform" the contract after he "later became a resident of Vermont." The Court held that the contract did not evidence " 'a transaction involving commerce,' " *id.*, at 200, and that the FAA did not apply because there was no showing that Bernhardt, in performing the contract, "was working 'in' commerce, was producing goods for commerce, or was engaging in activity that affected commerce." *Id.* at 201. See also *Allied-Bruce*

---

[2] The FAA provides, in pertinent part:

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract. [9 USC 2.]

"[C]ommerce," as herein defined, means commerce among the several States or with foreign nations, . . . but nothing herein contained shall apply to contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce. [9 USC 1.]

*Terminix Cos, Inc v Dobson*, 513 US 265; 115 S Ct 834; 130 L Ed 2d 753 (1995).

The facts of the present case are considerably less compelling than those in *Bernhardt*. Plaintiff Rushton was employed by Meijer as a floor detective. Her contractual duties did not facilitate, affect, or arise out of interstate or foreign commerce. Thus, even the broadest construction of the statutory phrase "involving commerce" cannot encompass plaintiff's employment contract with Meijer.[3] Moreover, it is not enough that one party's business in general involves interstate activity. *Becker v Amoco Pipeline Co*, 1989 US Dist LEXIS 11309 (ND Ill, 1989). Therefore, the fact that Meijer's general business activities may involve interstate commerce does not change the analysis because the proper focus under the FAA is on the particular contract at issue. Accordingly, we conclude that the FAA is inapplicable to this matter.

Only two of the dissent's arguments warrant a response. First, the dissent chides us for neglecting this state's statutory arbitration act,[4] which the dis-

---

[3] Accord *Ferro v Ass'n of Catholic Schools*, 623 F Supp 1161, 1167 (SD NY, 1985) (teacher's employment contract did not evidence a transaction involving commerce); *Becker v Amoco Pipeline Co*, 1989 US Dist LEXIS 11309 (ND Ill, 1989) (agreement involving the laying of pipeline over a local tract of land did not contemplate interstate activity). Cf. *Dickstein v DuPont*, 320 F Supp 150 (D Mass, 1970), aff'd 443 F2d 783 (CA 1, 1971) (employment contract of an account executive contemplated use of interstate travel or communication facilities and therefore affected commerce); *Bleumer v Parkway Ins Co*, 277 NJ Super 378; 649 A2d 913 (1994) (day-to-day management and control activities of the plaintiff, an automobile insurance sales manager, necessarily involved interstate commerce); *Bridas Sociedad Anonima Petrolera Indus y Comercial v Int'l Standard Electric Corp*, 128 Misc 2d 669; 490 NYS2d 711 (1985) (a shareholders' agreement was "inextricably intertwined" with a sale of stock in a foreign corporation by an American corporation to another foreign corporation and therefore arose out of foreign commerce).

[4] See MCL 600.5001 *et seq.*; MSA 27A.5001 *et seq.*

sent argues overrides § 803 of the Civil Rights Act. A basic rule of statutory construction is that a statute specific in language and enacted contemporaneously with or after a general statute covering the same subject matter constitutes an exception to the general statute if there appears to be conflict between them. *State Hwy Comm'r v Detroit City Controller*, 331 Mich 337, 363-364; 49 NW2d 318 (1951). Here, § 803 of the Civil Rights Act—which was enacted in 1976 and took effect in 1977—must be viewed as an exception to the generally applicable arbitration statute—which was enacted in 1963. Our courts have never held out the proposition suggested by the dissent that the Legislature, when enacting legislation that indirectly affects extant legislation, must expressly repeal or amend the affected statute. Thus, the fact that the arbitration statute does not expressly exempt civil rights claims in the context of employment disputes is of no moment.

Second, the dissent asserts that our decision will force "sophisticated employers," like defendant Meijer, either to abandon its policy of just-cause employment or to simply leave the state for a business-friendly environment. The dissent "cannot help but sense" that we, along with three members of the Supreme Court, have attempted to "str[ike] a blow for the working people of this state." As members of the judiciary, however, our mandate is to enforce the laws as written by the Legislature. We acknowledge our surprise at our dissenting colleague's willingness, in this case, to abandon his long-held support for the unambiguous written word of the Legislature. Indeed, it was our dissenting colleague who stated that, "[c]learly, it is for the Legislature, and not the courts,

to change substantive laws affecting public policy,"
*McDougall v Eliuk*, 218 Mich App 501, 518-519; 554
NW2d 56 (1996) (TAYLOR, P.J., dissenting), and that
"judicial misgivings regarding the wisdom of a legisla-
tive . . . policy do not provide, absent a violation of
the constitution, a legal foundation for overriding leg-
islative intent," but rather that "[t]he wisdom of this
policy is a political question to be resolved in the
political forum," *People v Poole*, 218 Mich App 702,
714; 555 NW2d 485 (1996). Section 803 plainly and
forcefully provides that the Civil Rights Act "*shall not*
be construed to diminish the right of a person *to
direct or immediate* legal or equitable remedies in
the courts of this state" (emphasis added). The dis-
sent's ambitious attempt to create an ambiguity where
none exists is not persuasive.

After examining federal and Michigan civil rights
jurisprudence, Justice CAVANAGH stated, and we agree:

> In conclusion, with respect to equal opportunity in the
> pursuit of civil liberties, such as employment, I believe that
> the right to be free from unlawful discrimination is of high-
> est priority and too important to jeopardize. I further
> believe that the constitutionally guaranteed direct access to
> a judicial forum is so interwoven with the enforcement of
> civil rights in Michigan that we cannot separate them with-
> out potentially harming substantive civil rights. Accordingly,
> I would hold that the Michigan Constitution and our long-
> standing public policy preclude the enforcement of prospec-
> tive arbitration agreements in employment contracts.
>
> Finally, I would assert that I am not backing away from
> the public policy favoring alternative means of dispute reso-
> lution. For aggrieved individuals seeking to pursue reme-
> dies for claims that have already accrued, arbitration may
> present a quicker and cheaper means of receiving relief,
> and I fully support the parties' voluntary intent in those
> cases. I would limit this opinion to the arbitration agree-

ments in employment contracts entered into before any claim for unlawful discrimination has accrued. [*Heurtebise,* 452 Mich 437-438.]

Accordingly, we hold that Meijer cannot require its employees, as a condition of employment, to waive prospectively their right to pursue direct and immediate review of civil rights claims in a judicial forum. The provision of the parties' private employment contract requiring plaintiff, a nonunion employee, to exhaust the termination appeal procedure, including binding arbitration, before filing a lawsuit in the circuit court, is void as it relates to her gender discrimination claim under Michigan law.[5] The trial court's order denying defendant's motion for summary disposition of plaintiff's gender discrimination claim is affirmed.

Reversed in part and affirmed in part. Remanded for further proceedings regarding plaintiff's gender discrimination claim. We retain no further jurisdiction.

FITZGERALD, P.J., concurred.

TAYLOR, J. *(concurring in part and dissenting in part).* I wholeheartedly concur with part I of the majority opinion; however, I dissent from part II. Thus, I would reverse the lower court's order denying summary disposition for defendant in its entirety.

The essence of the majority position is that the parties' contract is valid except for the agreement to

---

[5] Given our resolution of this issue, we decline to address the issue whether the provision of the parties' contract requiring the discharged employee to file an internal complaint within fourteen days constitutes an improper shortening of the applicable statute of limitations. See, e.g., *Herweyer v Clark Hwy Services, Inc,* 455 Mich 14; 564 NW2d 857 (1997).

arbitrate a civil rights claim. Thus, the agreement to arbitrate, as it pertains to civil rights, has been found to violate public policy, and the court has rewritten the parties' agreement by striking that provision. Accordingly, the current state of the law is that the freedom to contract prospectively with regard to arbitration of civil rights claims is not available to our citizens on the asserted ground that such freedom offends public policy. I respectfully disagree.

In our jurisprudence, contractual freedom is the axiomatic norm, and to deviate from that norm requires justification.[1] The majority asserts that there is such justification and that it is found in a constitutional provision, a statute, and a nonmajority opinion of the Supreme Court. Yet, as I explain below, the authority cited by the majority does not compel, or even allow, the conclusions that it has drawn from them. As a result, the majority has, without authority, but undoubtedly with good intentions, rewritten the parties' contract.

In our original opinion in this case, we held that defendant was entitled to summary disposition of plaintiff's gender discrimination claim because she failed to exhaust the remedies available to her pursuant to defendant's alternative dispute resolution (ADR)

---

[1] See, e.g., *Dep't of Navy v Federal Labor Relations Authority*, 295 US App DC 239, 248; 962 F 2d 48 (1992) (cited with approval in *Port Huron Ed Ass'n v Port Huron Area School Dist*, 452 Mich 309, 319; 550 NW2d 228 (1996):

Because of the fundamental policy of freedom of contract, the parties are generally free to agree to whatever specific rules they like, and in most circumstances it is beyond the competence of the Authority, the National Labor Relations Board or the courts to interfere with the parties' choice.

procedure.[2] We held that plaintiff's sole remedy for her gender discrimination claim was the ADR procedure. *Rushton v Meijer, Inc*, unpublished memorandum opinion, issued March 1, 1995 (Docket No. 164272). The Supreme Court, 453 Mich 943 (1996), remanded this case to us for reconsideration in light of *Heurtebise v Reliable Business Computers, Inc*, 452 Mich 405; 550 NW2d 243 (1996). First, there is nothing in the majority holding of *Heurtebise* that suggests our prior reversal of the trial court's holding was not the correct resolution of this issue. Indeed, a majority of the justices of the Supreme Court specifically declined to reach this issue. *Id.* at 438-439. Nevertheless, a minority opinion signed by two current and one former members of the Supreme Court stated in dicta that it is contrary to Michigan public policy to require an employee to waive resolution of a civil rights claim in a judicial forum as a condition of employment. That dicta has now been adopted, embellished, and made the law of this state as a result of part II of the majority opinion herein.

The conclusion of the minority opinion in *Heurtebise* is premised primarily upon Const 1963, art 5, § 29, which provides: "Nothing contained in this section [establishing the civil rights commission] shall be construed to diminish the right of any party to direct and immediate legal or equitable remedies in the courts of this state," and its statutory counterpart, MCL 37.2803; MSA 3.548(803), which provides: "This [civil rights] act shall not be construed to diminish

---

[2] Plaintiff failed to exhaust a contractual remedy available to her under the termination appeal procedure when she failed to demand arbitration (step two) after the termination of her employment was upheld under step one of the termination appeal procedure.

the right of a person to direct or immediate legal or equitable remedies in the courts of this state." As explained below, the conclusion of the minority opinion in *Heurtebise* and the majority here is not established by the cited constitutional provision or the cited statute.

Indeed, the Supreme Court has definitively construed these provisions in a controlling opinion in a way that is not harmonious with the minority dicta opinion in *Heurtebise* or the majority opinion herein. In *Nummer v Dep't of Treasury*, 448 Mich 534, 550; 533 NW2d 250 (1995), the Supreme Court said that the above-cited constitutional provision and statute mean that "the Civil Rights Commission does not have exclusive jurisdiction over discrimination claims, but instead has concurrent jurisdiction with the circuit courts."[3] Thus, the cited constitutional language simply means that a person is not required to exhaust whatever remedies he may have with the Civil Rights Commission before filing a circuit court lawsuit.[4] In no event can it be said, as the minority opinion in *Heurtebise* claims and the majority herein adopts, that this constitutional provision provides a nonwaivable right to a judicial forum or precludes the enforcement of prospective arbitration agreements in

---

[3] I note that the majority does not respond to this argument. Indeed, the majority states that only two of my arguments warrant a response. I am unsure what that means but incline to the view that it means that they have no credible response to the positions they have declined to answer.

[4] This is in contrast to the federal system wherein a party must obtain a right to sue letter from the Equal Employment Opportunity Commission (EEOC) before asserting a federal civil rights claim in federal court. See *Nummer v Dep't of Treasury*, *supra* at 548, n 13 (exhaustion rules apply in the federal system); *Heurtebise*, *supra* at 419 (title VII requires claimants to exhaust administrative remedies with the EEOC before pursuing judicial relief).

employment contracts. 452 Mich 436, 438. The cited constitutional provision simply does not address the propriety of prospective agreements to arbitrate civil rights disputes in employment contracts.

The cited statutory language is similarly straightforward. Section 803 states that the Michigan Civil Rights Act itself is not to be construed to diminish the right of a person to direct or immediate legal or equitable remedies in Michigan courts. That is, the Legislature wished to make it clear that the remedies in the Civil Rights Act are cumulative to preexisting common-law and statutory rights. This was necessary because, before passage of the Civil Rights Act, certain civil rights were already guaranteed by the common-law and by statute, and the Legislature wanted to make clear that its broad entry into the field had not abrogated the previously existing common-law and statutory rights. See *Marsh v Dep't of Civil Service*, 142 Mich App 557, 563, n 2, 567, n 6; 370 NW2d 613 (1985). See also *Heurtebise, supra* at 423. Thus, as with the constitutional provision, § 803 simply does not address the issue of the propriety of prospective agreements to arbitrate civil rights claims. Accord *Prudential Ins Co v Shammas*, 865 F Supp 429, 433 (WD Mich, 1993) (the court rejected the argument that MCL 37.2803; MSA 3.548[803] precluded arbitration under the federal arbitration act of a Michigan civil rights claim).

A statute that does address the issue is Michigan's statutory arbitration act.[5] This act allows predispute

---

[5] The majority claims that I believe the state arbitration act "overrides" § 803. I do not believe it, nor have I said it. As set forth in my dissent, § 803 and the state arbitration act are not incompatible in any way. Thus I do not contend that either statute overrides the other. The majority's con-

contracts to arbitrate[6] and only excepts collective bargaining and certain real estate disputes from its purview. MCL 600.5001(3); MSA 27A.5001(3); MCL 600.5005; MSA 27A.5005. Because the act allows predispute agreements to arbitrate civil rights claims, it establishes Michigan's public policy concerning this issue. Obviously, if the Legislature wanted to preclude predispute agreements to arbitrate civil rights claims, it would have excluded such claims by name, just as it excluded collective bargaining agreements and certain real estate claims. The express exclusion of some claims implies inclusion of those not mentioned. *People v Jahner*, 433 Mich 490, 500, n 3; 446 NW2d 151 (1989). Therefore, for this reason also, there is no jus-

---

clusion that § 803 must be viewed as an exception to the state arbitration act is in error for the simple reason that the two statutes do not conflict. Because § 803 does not expressly forbid predispute agreements to arbitrate civil rights claims, something the state arbitration act allows, it is the majority's position that this authorization of the state arbitration act has been repealed by implication. The repeal by implication doctrine is inapplicable because the statutes can be read harmoniously. Our Supreme Court has addressed this situation and said: " ' "Repeals by implication are not favored and will not be indulged in if there is any other reasonable construction." ' " *Wayne Co Prosecutor v Dep't of Corrections*, 451 Mich 569, 576; 548 NW2d 900 (1996), quoting *House Speaker v State Administrative Bd*, 441 Mich 547, 562; 495 NW2d 539 (1993), which in turn quoted *Attorney General ex rel Owen v Joyce*, 233 Mich 619, 621; 207 NW2d 863 (1926). The majority has chosen to ignore this admonition.

[6] MCL 600.5001(2); MSA 27A.5001(2) states:

> A provision in a written contract to settle arbitration under this chapter, a controversy thereafter arising between the parties to the contract, with relation thereto, and in which it is agreed that a judgment of any circuit court may be rendered upon the award made pursuant to such agreement, shall be valid, enforceable and irrevocable save upon such grounds as exist at law or in equity for the rescission or revocation of any contract.

Meijer's ADR procedure contains the necessary language that the decision of the arbitrator is intended to be enforceable in any court of competent jurisdiction.

tification for this Court to substitute its judgment for that of the contracting parties in declaring the parties' predispute agreement to arbitrate invalid.

Moreover, reading § 803 to produce the result that the majority reaches here requires one to ignore how explicitly our Legislature speaks when it wants to bar prospective contractual waivers of important rights. For example, in the Employment Security Act, the Legislature provided that no agreement by an individual to waive his right to benefits or any other rights under the act is valid. MCL 421.31; MSA 17.533. Similarly, when enacting the Worker's Disability Compensation Act, the Legislature provided that no agreement by an employee to waive his rights to compensation under the worker's compensation act before an injury shall be valid. MCL 418.815; MSA 17.237(815). In contrast, there is no waiver-bar language in either the constitution or § 803 vis-à-vis predispute agreements to arbitrate civil rights claims. This lack of language barring a waiver is inappropriately given no weight by the majority.

In addition, the majority misunderstands, and thus mischaracterizes, the import of the proper construction of the constitution and § 803. Defendant is not asserting that, because of the existence of the Civil Rights Commission section of the constitution or of the Civil Rights Act, plaintiff is precluded from going to the circuit court. Rather, defendant argues that these provisions do not mean one *must* go to the circuit court, and in no way preclude contracting parties from agreeing to a different forum than a court, to adjudicate their civil rights disputes. I agree with defendant's argument because this construction leaves the constitution and § 803 with the meaning

their language clearly implies and also because it does not obliterate freedom of contract with regard to the matter here under consideration.[7]

Finally, the whole notion of prospective waivers of important rights is not, as the majority seems to believe, inherently repugnant to our constitutional order. Indeed, it is well established that rights of a higher standing than that of forum selection, i.e., constitutional rights themselves, may be prospectively waived.[8] See, e.g., *Snepp v United States*, 444 US 507; 100 S Ct 763; 62 L Ed 2d 704 (1980) (First Amendment right to speak or right about information gained in course of employment with government may be waived by contract); *Whispering Pines AFC, Home, Inc v Dep't of Treasury*, 212 Mich App 545, 550; 538 NW2d 452 (1995) (due process right to an evidentiary hearing to resolve a dispute may be waived by signing

---

[7] The majority asserts that my construction of § 803 is inconsistent with my published admonitions encouraging all judges to exercise judicial restraint in deferring to the unambiguous word of the Legislature. It is pleasant, albeit a bit surprising, to see my two colleagues concerned about insufficient deference to the Legislature. But alas, as with most fresh converts, they are having trouble with the application of the doctrine. The problem here is that it is their position, not mine, that requires one to rewrite the statute. To reach the conclusion the majority reaches, one has to rewrite § 803 to state: "*Neither* this act, *nor a private contract, nor the state arbitration act* shall be construed to diminish the right of a person to direct or immediate legal or equitable remedies in the courts of this state." (Added language italicized.) This is not what I counseled in my dissent in *McDougall v Eliuk*, 218 Mich App 501, 516 ff; 554 NW2d 56 (1996), lv pending. The proper thing to do in the case at bar is not to rewrite the statute as the majority has effectively done. Perhaps in future cases my brothers will better grasp the application of the principle, but for now I must take solace in the fact we at least agree with the principle of deferring to the Legislature absent constitutional concerns.

[8] The ADR procedure does not waive any of a plaintiff's civil rights—it only affects the forum that will determine if those rights have been violated. *McKinstry v Valley Obstetrics-Gynecology Clinic, PC*, 428 Mich 167, 184; 405 NW2d 88 (1987); *Campbell v St John Hosp*, 434 Mich 608, 615; 455 NW2d 695 (1990).

a contract with the government).[9] Given that these highly valued constitutional rights may be prospectively waived without offending public policy, how can it be seriously suggested that, without a statute or provision of the constitution prohibiting it, and, in fact, our state arbitration act allowing it, the right to have a circuit court to resolve a civil rights dispute may not be prospectively waived in favor of having such a claim adjudicated in an arbitral forum?

The majority also adopts Justice CAVANAGH's statement that § 803 expressly prohibits an exhaustion of administrative remedies requirement. I agree with this proposition of law, but note that it has no relevance to the question whether parties may enter into predispute agreements to arbitrate civil rights claims.[10] This

---

[9] Indeed, constitutional rights are also waived when a person fails to assert them. Also see *People v Rodriguez*, 192 Mich App 1, 5; 480 NW2d 287 (1991) (constitutional right to appeal a criminal conviction may be waived as a result of a guilty plea).

[10] Cases such as *Michigan Professional Employees Society v Dep't of Natural Resources*, 152 Mich App 595, 600; 394 NW2d 786 (1986) (MPES), are readily distinguishable. In *MPES*, a labor union filed a civil rights complaint in the circuit court on behalf of three of its members. The trial court granted accelerated judgment because the collective bargaining agreement required all contract disputes to be submitted to arbitration. This Court reversed, stating that a classified civil servant (union member) may directly, and in the first instance, file a discrimination lawsuit in the circuit court without the necessity of exhausting rights under a collective bargaining agreement. Little rationale for this holding was given, but we are fortunate to have a parallel case to *MPES*, *Pryner v Tractor Supply Co*, 109 F3d 354 (CA 7, 1997), authored by Judge Richard Posner. In *Pryner*, the court fully considered the virtually identical issue whether a collective bargaining agreement can compel the arbitration of a federal antidiscrimination claim. The *Pryner* court concluded it could not, and based its analysis on three main points: (1) the plaintiffs' rights under the collective bargaining agreements were not as extensive as their statutory rights; (2) the arbitration procedure could only be invoked by the union and not the worker; and (3) collective bargaining agreements bind all members of a bargaining unit even if an individual employee opposed the agreement. Obviously, had these factors not been present, the agreement would have been enforceable. To understand this is important because in

proposition of law is irrelevant to the question before us because a contractual remedy is not an administrative remedy. It is important to remember what an administrative remedy is and what it is not. An administrative remedy is a remedy that is available from an administrative agency, such as the Civil Rights Commission. It is not, as the majority seems to suggest, any remedy other than a court remedy. To put a finer point on it, an administrative remedy is not one from an arbitration forum established through a privately established method of alternative dispute resolution. Thus, because we are dealing with an arbitration available through a valid contract, the doctrine that holds that a civil rights claimant need not exhaust administrative remedies is simply inapplicable. It is disingenuous for the majority to ignore the difference between an administrative remedy and a private contractual remedy, and there is no principled basis for treating a private contractual remedy as if it

---

our case, unlike in *Pryner* or *MPES*, we have the situation where the invalidating factors eliminating employee freedom to trigger the arbitration are not present. First, plaintiff's rights herein are exactly coextensive with available statutory rights because the Meijer ADR procedure states that arbitrators are specifically authorized to award any relief that a court of law could award. Second, plaintiff had the absolute right to force the matter to arbitration and was not required to convince a union to pursue the matter. Third, there is no concern that a union negotiated something plaintiff may not have agreed with because plaintiff, under the majority's own analysis, agreed to just-cause employment subject to arbitration of all employment disputes when she accepted an offer of employment from defendant. Thus, *MPES*, even as *Pryner*, must be seen as not standing for blanket unenforceability of predispute arbitration agreements, but only the illegalizing of such agreements when the invalidating factors *Pryner* points out are present. The implicit holding of *MPES*, as seen through the lens of *Pryner's* analysis, is that, absent the difficulties seen in *Pryner*, a predispute agreement to arbitrate a civil rights claim will be enforced. Because we are in such a situation, we should enforce the agreement.

were identical to a remedy available from an administrative agency.

At this point, then, at least to my satisfaction, the flaws in the majority's position have been demonstrated. This draws me to the conclusion that the real objection the majority has can be found at the end of the minority opinion in *Heurtebise*. *Id.* at 438. There, Justice CAVANAGH states that he believes that the right to be free of unlawful discrimination is just "*too important*" to be left to any dispute resolution process, prospectively agreed upon, other than that available in a court. *Id.* at 438 (emphasis supplied). While a jurist can, of course, hold this view as a personal matter, I do not know how this gets converted into a rule of law given that any legal basis for this view has been demonstrated to be lacking. In a situation like the case at bar, it is for the Legislature (which as we have seen has spoken concerning this and allowed that which Justice CAVANAGH and the majority opinion herein disallows), or for the people directly, through referendum or constitutional amendment, to establish as the public policy. Because the Legislature has acted to establish this public policy in this area, it is inappropriate for the majority to disregard that action.

Further, I respectfully point out that, in my view, Justice CAVANAGH's position also is ill-advised because it can only be reached if one, notwithstanding protests to the contrary, *id.* at 438, holds the notion that arbitration is a second-rate type of fact-finding and remedy-producing vehicle that is to be discouraged in favor of traditional litigation. That, however, is inconsistent with how the courts view arbitration. Both the Michigan and the federal courts have enunciated

strong public-policy positions that favor the utiliza-
tion of arbitration to resolve disputes. Such state-
ments are premised, in part, upon Congress' enact-
ment of the federal arbitration act, 9 USC 1 to 15, and
Michigan's enactment of the previously discussed
statutory arbitration act, MCL 600.5001 *et seq.*; MSA
27A.5001, and clearly show that arbitration is favored
as a means of resolving disputes.

The United States Supreme Court in *Gilmer v
Interstate/Johnson Lane Corp*, 500 US 20, 34, n 5; 111
S Ct 1647; 114 L Ed 2d 26 (1991), stated:

> The Court in *Alexander v Gardner-Denver Co* [415 US 36;
> 94 S Ct 1011; 39 L Ed 2d 147 (1974)] also expressed the
> view that arbitration was inferior to the judicial process for
> resolving statutory claims. 415 US, at 57-58. That "mistrust
> of the arbitral process," however, has been undermined by
> our recent arbitration decisions. [*Shearson American
> Express, Inc v McMahon*, 482 US 220, 231-232; 107 S Ct
> 2332; 96 L Ed 2d 185 (1987)]. "[W]e are well past the time
> when judicial suspicion of the desirability of arbitration and
> of the competence of arbitral tribunals inhibited the devel-
> opment of arbitration as an alternative means of dispute
> resolution." *Mitsubishi Motors Corp v Soler Chrysler-
> Plymouth, Inc*, 473 US 614, 626-627 [87 L Ed 2d 444; 105 S
> Ct 3346] (1985).

Our Michigan courts have said no less. In *Huntington
Woods v Ajax Paving Industries, Inc*, 177 Mich App
351, 356; 441 NW2d 99 (1989), rev'd in part on other
grounds on rehearing 179 Mich App 600 (1989), Judge
(now Justice) MARILYN KELLY said: "Our courts have
long been supportive of arbitration agreements and
have discouraged efforts to circumvent their objec-
tives." Also, in *Whispering Pines, supra* at 550, the
Court stated: "[T]he law favors contractual terms pro-
viding for alternate dispute resolution mechanisms."

Most recently, in *Brucker v McKinlay Transport, Inc,*
454 Mich 8, 17; 557 NW2d 536 (1997), the Michigan
Supreme Court stated: "[P]arties who can locate an
alternative method of dispute resolution are
encouraged to bypass the courts and use other appro-
priate means." Indeed, Justice CAVANAGH himself
acknowledges this virtually uniform view by conced-
ing that there is a public policy favoring alternative
dispute resolution, while puzzlingly asserting that the
import of this view does not adversely affect his posi-
tion. *Heurtebise, supra* at 438.

One cannot help sensing that the members of the
Supreme Court who joined in the *Heurtebise* minority
opinion, as well as the majority here, feel that they
have struck a blow for the working people of this
state. After all, no arbitration of civil rights claims,
and only full dress litigation with all of its protec-
tions, sounds at first blush to be protective of civil
rights principles. Yet, the cost may well be that just-
cause employers, such as Meijer, having had much of
the value of their bargain (just-cause employment
given in return for a promise to eliminate lengthy,
costly civil rights litigation in court) stripped from
them by this decision, will simply terminate the whole
just-cause regime, as they have reserved the right to
do, and return to at-will employment. Moreover,
might it not be that, in practice, even just-cause dis-
putes (that would still be subject to arbitration under
part I of the majority opinion) will opportunistically
be coupled with or pleaded as a civil rights claim,[11] in
order to avoid arbitration? Whether this maneuvering

---

[11] As the saying goes, when all you have to work with is a hammer, eve-
rything starts to look like a nail.

will actually take place is less important than that it will be anticipated by sophisticated employers, thus providing an additional disincentive for an employer to enter into any agreement offering just-cause employment in return for an agreement to utilize arbitration to resolve employment-related disputes and thereby leaving employees in the less desirable status of at-will employment.

In short, can it be said with certainty that the majority's opinion has really advanced the cause of this state's employees? It can be doubted. The reason is that every worker cares about freedom from arbitrary termination while fewer, fortunately, have any need to worry about, or avail themselves of, civil rights remedies. While this calculus may not be every person's, it is for that reason it would be wise, especially given the legislative allowance of predispute agreements to arbitrate civil rights claims and no constitutional bar against it, not to impose our preferences on the parties and to allow them instead, as free men and women, to enter or not to enter into employment with these conditions. Were we to have ruled that just-cause employers may prospectively agree with their employees to arbitrate civil rights claims, one could reasonably assume that more at-will employers would seriously consider, and have incentive to become, just-cause employers. It is fortunate that ours may not be the final word on this question and that our Supreme Court, should it grant leave in this case (which I urge), will see this issue, as the *Heurtebise* majority's refusal to join the minority opinion may suggest, more clearly than the majority in this Court does.

In my opinion, defendant was entitled to summary disposition of plaintiff's civil rights claim because the contract she had with Meijer required utilization of arbitration as the "exclusive, final and binding method to resolve all claims arising out of termination from employment." Plaintiff's civil rights have not been diminished one iota by the agreement to arbitrate, and the only waiver involved is the forum for deciding if her civil rights had been violated. *McKinstry v Valley Obstetrics-Gynecology Clinic, PC*, 428 Mich 167; 405 NW2d 88 (1987). There is no valid reason not to enforce this contractual provision. Thus, I would hold that a just-cause employer that agrees to pay the costs of arbitration and authorizes the arbitration panèl to grant any relief a court of law could grant, as Meijer's policy provides, may require a non-union employee to arbitrate all employment-related disputes, including civil rights claims, as a condition of employment. Accord *Cole v Burns Int'l Security Services*, 323 US App DC 133; 105 F3d 1465 (1997) (employer may require arbitration of civil rights claims by employees if employer assumes responsibility for the payment of the arbitrator's compensation and arbitrators are authorized to grant all of the types of relief that would otherwise be available in court).[12]

---

[12] Moreover, even if I were persuaded, which I am not, that it would violate public policy to require just-cause employees to arbitrate civil rights claims, I would still find that defendant was entitled to summary disposition because lawful conditions precedent to the initiating of a circuit court action were not met by plaintiff. Section N of the Meijer termination appeal procedure states that if a court of competent jurisdiction determines that the termination appeal procedure is not the sole and exclusive remedy and forum for some or all of an employee's claims, exhaustion of the termination appeal procedure is a condition precedent to institution of a legal proceeding. Therefore, even assuming for the sake of the argument that plaintiff could not forever be deprived of litigating her gender discrimination claim in the circuit court through a contractual

As a final matter, one of the reasons cited by the trial court for refusing to summarily dismiss plaintiff's gender discrimination claim was the fact that the Meijer's termination appeal procedure requires a person whose employment has been terminated to invoke the procedure within fourteen days of discharge by filing a form. This issue was not ripe for the trial court's handling because, whether it is permissible or not to allow only fourteen days to file a claim, this plaintiff managed to meet the standard and cannot claim prejudice. The propriety of this short period simply was not relevant to defendant's motion because defendant was not claiming that plaintiff had failed to invoke the procedure within fourteen days.

Because I would find the prospective agreement to arbitrate civil rights claims enforceable under Michigan law, I find it unnecessary to address defendant's claim that the federal arbitration act preempts a ruling to the contrary. See, e.g., *Great Western Mortgage Corp v Peacock*, 110 F3d 222 (CA 3, 1997) (in enacting the federal arbitration act, Congress withdrew the power of the states to require a judicial forum for the resolution of claims that the contracting parties agreed to resolve by arbitration), *Patterson v Tenet Healthcare, Inc*, 113 F3d 832 (CA 8, 1997) (federal arbitration act required the plaintiff to arbitrate a state [Missouri] civil rights claim), *O'Neil v Hilton Head Hosp*, 115 F3d 272 (CA 4, 1997), and *Burns v Olde Discount Corp*, 212 Mich App 576, 580; 538

---

agreement with her employer, she still was required to utilize the termination appeal procedure before she could file a lawsuit in the circuit court. Plaintiff failed to do this, and as a consequence she should be barred from pursuing a gender discrimination claim in the circuit court. This is fatal to plaintiff's desire to pursue a civil rights claim in the circuit court.

NW2d 686 (1995) (state courts are bound under the Supremacy Clause, US Const, art VI, § 2, to enforce the substantive provisions of the federal arbitration act).

For these reasons I would reverse and remand for entry of a judgment in defendant's favor.