GREEN v GALLUCCI

Docket Nos. 93348, 93958. Submitted December 3, 1987, at Detroit. Decided February 19, 1988.

In September, 1982, Annie B. Moore entered Alexander Blain Memorial Hospital for various surgical procedures. In October, 1982, she died, allegedly due to complications from the surgery. In September, 1984, Rhonda Green, as personal representative of the estate of Annie B. Moore, filed a malpractice action in Wayne Circuit Court against the hospital and Richard Gallucci, M.D., and S. Raja Sekharan, M.D. Defendants moved for summary disposition on the basis that the court lacked subject matter jurisdiction because decedent had signed an arbitration agreement. An evidentiary hearing was held on the motion at which a signed copy of such an agreement was produced and testimony was had from the admitting clerk to the effect that upon every admission the patient is given a copy of the signed arbitration agreement and a booklet explaining the nature and effect of the arbitration agreement. Plaintiff, decedent's daughter, testified that she had found neither a copy of the agreement nor the booklet among her mother's personal effects. The trial court, Roland L. Olzark, J., granted summary disposition in favor of the hospital and Dr. Sekharan, but denied the motion with respect to Dr. Gallucci due to his failure to produce a participation agreement between himself and the hospital. When Dr. Gallucci produced the participation agreement, summary disposition in his favor was granted. Plaintiff appealed separately the two orders of summary disposition. The appeals were consolidated.

The Court of Appeals held:

1. The hospital and doctors, being the ones relying on the arbitration agreement, had the burden of showing the existence of an arbitration agreement that conforms to the statutory mandate. The signed copy of the agreement, coupled with the testimony concerning the admitting clerk's customary practices, were sufficient to demonstrate compliance with the statu-

REFERENCES

Am Jur 2d, Physicians, Surgeons, and Other Healers § 376.
Arbitration of medical malpractice claims. 84 ALR3d 375.

tory mandate. Accordingly, a presumption of validity arose and plaintiff had the burden of going forward and demonstrating noncompliance. Plaintiff failed to carry that burden, the failure to find a copy of the agreement and booklet among decedent's effects not being sufficient to establish the invalidity of the arbitration agreement.

2. Since the hospital offered the participation agreement to the doctors, the doctors' acceptances of the agreements by signing the same established the mutuality of assent necessary to establish binding contracts. Accordingly, the participation agreements became binding at the moment the doctors signed them, even though the hospital had not signed the agreements.

Affirmed.

1. ARBITRATION — MALPRACTICE ARBITRATION ACT — BURDEN OF PROOF — PRESUMPTION OF VALIDITY.

The burden of establishing the existence of an arbitration agreement that conforms to the strict requirements of the Malpractice Arbitration Act rests with the party seeking to enforce the agreement; once prima facie evidence of such an agreement has been presented, the statutory presumption of validity accrues, and the burden of going forward with evidence to rebut the presumption then shifts to the party seeking to avoid the agreement (MCL 600.5041 *et seq.*; MSA 27A.5041 *et seq.*).

2. ARBITRATION — MALPRACTICE ARBITRATION ACT — HABIT AND ROUTINE.

In an action challenging the validity of a malpractice arbitration agreement, evidence of habit or routine of a hospital or health care provider is relevant to establish that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice (MCL 600.5041 *et seq.*; MSA 27A.5041 *et seq.*).

3. CONTRACTS — MUTUALITY — ARBITRATION AGREEMENTS — PHYSICIANS AND SURGEONS — HOSPITALS.

An enforceable contract arises at the moment that there is mutuality of assent among the parties; an enforceable participation contract whereby an independent doctor will be bound by any arbitration agreements executed in favor of a hospital arises at the moment that the doctor signs the participation contract offered by the hospital, since at that moment mutuality of assent is established even if the participation contract has not been signed by the hospital.

*Byron E. Siegel,* for plaintiff.

*Schureman, Frakes, Glass & Wulfmeier* (by *Charles D. Brown*), for defendant Gallucci.

*Plunkett, Cooney, Rutt, Watters, Stanczyk & Pedersen, P.C.* (by *Robert G. Kamenec*), for defendant Sekharan.

*Kitch, Saurbier, Drutchas, Wagner & Kenney, P.C.* (by *Susan Healy Zitterman*), for defendant hospital.

Before: J. B. SULLIVAN, P.J., and CYNAR and R. J. TAYLOR,* JJ.

PER CURIAM. In this consolidated appeal, plaintiff, Rhonda Green, appeals as of right from the May 30, 1986, order of summary disposition in favor of defendants, Dr. S. Raja Sekharan and Alexander Blain Memorial Hospital and the July 11, 1986, order of summary disposition in favor of Dr. Richard Gallucci. We affirm.

On September 13, 1982, plaintiff's decedent, Annie B. Moore, entered defendant hospital for numerous surgical procedures including removal of lipoma from the right hip and surgical correction of hypoplasia of the breasts bilaterally. Approximately one month later, on October 7, 1982, Ms. Moore died allegedly due to complications from the surgery. On September 19, 1984, plaintiff, Rhonda Green, the decedent's daughter, filed suit against defendants alleging medical malpractice. In October, 1985, the various defendants moved for summary disposition on the basis of MCR 2.116(C)(4) in that the court lacked jurisdiction of the subject matter because Ms. Moore had signed an arbitration agreement with defendants.

An evidentiary hearing on the motion was held

---

* Circuit judge, sitting on the Court of Appeals by assignment.

on April 28, 1986. Elizabeth Bradley, an accredited records technician at the hospital, produced a copy of the agreement to arbitrate which Moore had signed. She also produced a participation agreement entered into by the hospital and Dr. Sekharan.

Margaret Young, the hospital's admitting clerk, testified regarding the standard admission procedure. She stated that upon admission each patient is given a copy of the signed arbitration form and an arbitration booklet. While Young could not specifically recall admitting Moore, she was sure that she had followed the standard admission procedure.

Green testified that she took her mother to the hospital and that her mother had gone into the admissions office while Green waited for her in the hallway. After her mother was admitted, Green looked through her mother's personal belongings and did not find an arbitration booklet or a copy of the arbitration agreement.

At the conclusion of the hearing, the trial court granted summary disposition to the hospital and Dr. Sekharan. Summary disposition was not granted to Dr. Gallucci due to his failure to produce a copy of the participation agreement between himself and the hospital.

Another hearing was held on June 13, 1986, to reconsider Dr. Gallucci's motion for summary disposition. At this hearing, Dr. Gallucci presented a participation agreement that he entered into with the hospital on August 26, 1982. Thereafter, the trial court granted Dr. Gallucci summary disposition. The instant appeals followed.

Plaintiff essentially raises two issues on appeal. First, she claims that the trial court erred in ruling that she had failed to prove the invalidity of the arbitration agreement pursuant to the Mal-

practice Arbitration Act (MAA), MCL 600.5041 *et seq.*; MSA 27A.5041 *et seq.*

In *McKinstry v Valley Obstetrics-Gynecology Clinic, PC,* 428 Mich 167; 405 NW2d 88 (1987), the Supreme Court resolved the conflict among panels of this Court regarding the burden of proof in establishing the validity or invalidity of an arbitration agreement signed pursuant to the MAA. The Court held that the burden of demonstrating the existence of an arbitration agreement that conforms to the strict requirements of the statute rests with the party seeking to enforce the agreement. Once prima facie evidence of such an agreement has been shown, the statutory presumption of validity is made out, and the burden of going forward with evidence to rebut the presumption then shifts to the party seeking to avoid the agreement. *Id.,* p 173.

In this case, defendants had the burden of demonstrating that the arbitration agreement conformed to the requirements of the statute. Plaintiff claims that the court's finding that the agreement complied with MCL 600.5041(6); MSA 27A.5041(6) was clearly erroneous. We disagree.

Section 5041(6) provides:

> The form of the agreement promulgated shall be accompanied by an information brochure which clearly details the agreement and revocation provision. The brochure shall be furnished the person receiving health care at the time of execution. The person receiving health care shall be furnished with either an original or duplicate original of the agreement.

In this case, defendants demonstrated that the arbitration agreement complied with the provisions of the MAA. In order to rebut the presumption of the agreement's validity, plaintiff was re-

quired to demonstrate noncompliance. Plaintiff argues that, because she did not locate an information brochure or an original or duplicate original of the arbitration agreement, defendants did not comply with the provisions of the MAA. However, defendants presented evidence through Young's testimony that it was customary admissions procedure to furnish each patient with an arbitration booklet and a copy of the arbitration agreement. Evidence of the habit of a person or of the routine practice of an organization is relevant to establish that the conduct of the person or organization on a particular occasion was in conformity with the habit or routine practice. *McKinstry, supra,* p 182. Thus, we cannot conclude that the trial court clearly erred in finding that plaintiff did not meet her burden of demonstrating that the instant arbitration agreement was invalid. MCR 2.613(C).

Secondly, plaintiff argues that she is not required to arbitrate her claims against defendants Sekharan and Gallucci since they failed to execute a valid arbitration participation contract with defendant hospital. Both doctors Gallucci and Sekharan had signed participation agreements with the hospital. However, neither of these agreements was signed by the hospital.

In *Wiegand v Tringali,* 22 Mich App 230, 234; 177 NW2d 435 (1970), this Court indicated the following regarding the intent to be bound by those who did not sign:

> [T]hose who do sign the writing may have intended to be bound by its terms even though less than all the named persons sign. Their intention governs. The intention of the parties is a fact to be decided upon the evidence, not by invoking our personal, professional, or judicial experience.

In our case, mutuality of assent between the hospi-

tal and doctors was established when the hospital offered the participation agreements to the doctors and the doctors accepted them by signing. At that moment, a binding contract was established.

Plaintiff's reliance on *Brown v Considine,* 108 Mich App 504; 310 NW2d 441 (1981), is misplaced. In *Brown,* the issue was whether a doctor-hospital participation agreement signed *after* the plaintiff's hospitalization bound plaintiff to arbitrate with the doctors. Here, these participation agreements had been signed prior to plaintiff's decedent's hospitalization. Thus, plaintiff is required to arbitrate her claims.

Affirmed.