HICKS v EPI PRINTERS, INC

Docket No. 251832. Submitted April 5, 2005, at Lansing. Decided April 12, 2005. Approved for publication June 23, 2005, at 9:00 a.m.

Carol L. Hicks brought an action in the Calhoun Circuit Court against EPI Printers, Inc., her former employer, claiming sexual harassment. The action was filed more than one year after the alleged harassment but within the three-year period of limitations for such an action. The court, James C. Kingsley, J., granted summary disposition for the defendant, ruling that the action was barred by an agreement to arbitrate, which agreement was contained in the employment manual and provided for a one-year period of limitations. The plaintiff appealed.

The Court of Appeals *held*:

1. The employment manual created an agreement between the parties that sexual harassment claims would be arbitrated. The defendant's reservation of the right to modify the manual and the at-will nature of employment did not render the manual unenforceable. Even if the manual did not create binding arbitration, the form that the plaintiff signed upon receiving the manual included a specific provision for arbitration.

2. The one-year period of limitations is reasonable. The plaintiff did not demonstrate that the one-year limitation imposed a hardship on her ability to bring a claim.

3. The plaintiff knowingly, intelligently, and voluntarily waived the statutory three-year period of limitations when she accepted the employment manual with its arbitration provision clearly stated.

Affirmed.

1. MASTER AND SERVANT — EMPLOYMENT MANUALS — MODIFICATION BY EMPLOYERS.

An employee manual that sets the terms and conditions of at-will employment, including a provision for mandatory arbitration of sexual harassment claims, is not rendered unenforceable by the employer's reservation of the right to modify the manual and the at-will nature of employment.

2. CIVIL RIGHTS — EMPLOYMENT DISCRIMINATION — ARBITRATION.

> An employer and an employee may agree to arbitrate employment discrimination claims and may provide for a period of limitations within which to arbitrate a claim that is shorter than the statutory three-year period of limitations applicable to actions for employment discrimination as long as the shorter period is reasonable and the employee has voluntarily, knowingly, and intelligently waived the longer period (MCL 600.5805[10]).

*Silverman, Smith, Bingen & Rice, P.C.* (by *Robert W. Smith*), for the plaintiff.

*Stephen D. Ihrig PC* (by *Stephen D. Ihrig*) and *Kreis, Enderle, Callander & Hudgins, P.C.* (by *Douglas L. Callander*), for the defendant.

Before: CAVANAGH, P.J., and JANSEN and GAGE, JJ.

PER CURIAM. Plaintiff Carol L. Hicks sued defendant EPI Printers, Inc., her former employer, claiming sexual harassment. The circuit court granted summary disposition in favor of defendant and dismissed plaintiff's action with prejudice, ruling that plaintiff's claims were barred by an agreement to arbitrate. Subsequently, the circuit court entertained plaintiff's motion for reconsideration and affirmed its original order. Plaintiff appeals as of right. We affirm.

Plaintiff began working for defendant as a temporary employee in 1990. She was hired as an at-will full-time employee on November 15, 1996. Plaintiff continued her employment until June 25, 2001, when she resigned because of alleged sexual harassment at the workplace and defendant's failure to respond to her complaints. The details of the harassment are irrelevant to the issues on appeal. What is relevant is language appearing in the employment manual plaintiff received when she became a full-time employee, as well as a receipt

form she signed acknowledging that she received, read, and understood the manual.

The manual opens with a letter from defendant's president, which provides in part:

> This Employment Manual provides answers to most of the questions [sic]. It provides answers concerning [defendant's] benefit programs, company policies and procedures, our responsibilities to you, and your responsibilities to [defendant]. . . .
>
> From time to time, the information included in our Employment Manual may change. Every effort will be made to keep you informed by appropriate means of communication. This may include postings on the company bulletin boards and/or notices sent directly to you in-house.

Under the heading "Purpose of this Employment Manual," defendant reiterated that the manual may change:

> [Defendant's] policies, benefits, and rules, as explained in this Employment Manual, may be changed as business, employment legislation, and economic conditions dictate. If provisions are changed, you will be given replacement pages for those that have become outdated. A copy will also be placed on our bulletin boards.

Immediately under the above text and under the heading "Notice" appeared the following provision:

> The policies in this employment manual are to be considered as guidelines. [Defendant] at its option, may change, delete, suspend, or discontinue any part or parts of the policies in this Employment Manual. . . . No one other than the President of [defendant] may alter or modify any of the policies in this Employment Manual. . . .
>
> In the event that any provision in this Employment Manual is found unenforceable and invalid, the finding will not invalidate the entire Employment Manual, but only the subject provision.

Under "Employment Policies," the manual urges new hires to carefully read the manual, which "is designed to answer many of your questions about the practices and policies of [defendant], what you can expect from [defendant], and what [defendant] can expect from you." Defendant did not make any changes to the manual between when plaintiff signed it and when she resigned.

The manual contains a number of references in capital letters to employment "At Will." All defendant's employees are at will, which according to the manual means that the employee "can be terminated with or without cause, and with or without notice, any time, at the option of either [defendant] or [the employee], except as otherwise provided by law."

Section 4.07 contained the following lengthy arbitration provision that appeared in bold and in capital letters as follows:

ANY DISPUTE, MATTER, OR CONTROVERSY INVOLVING CLAIMS FOR MONETARY DAMAGES AND/OR EMPLOYMENT RELATED MATTERS INCLUDING, BUT NOT LIMITED TO, ANY AND ALL CLAIMS RELATING TO TERMINATION OF EMPLOYMENT AND DISCRIMINATION SHALL BE ARBITRATED PURSUANT TO THE RULES OF THE AMERICAN ARBITRATION ASSOCIATION. EITHER PARTY MUST DEMAND ARBITRATION WITHIN ONE YEAR AFTER THE CONTROVERSY ARISES BY SENDING A NOTICE OF DEMAND TO ARBITRATE TO THE AMERICAN ARBITRATION ASSOCIATION ALONG WITH A COPY TO THE OTHER PARTY. THE DISPUTE SHALL THEN BE ARBITRATED BY AN ARBITRATOR PURSUANT TO THE *EMPLOYMENT DISPUTE RESOLUTION RULES* OF THE AMERICAN ARBITRATION ASSOCIATION. THE ARBITRATION SHALL TAKE PLACE AT THE OFFICE OF [DEFENDANT] IN BATTLE CREEK, MICHIGAN. IN THE DISPOSITION OF THE DISPUTE, THE ARBITRATOR SHALL BE GOVERNED BY THE EXPRESS TERMS OF THIS EMPLOYMENT

MANUAL AND OTHERWISE BY THE LAWS OF THE
STATE OF MICHIGAN WHICH SHALL GOVERN THE
INTERPRETATION OF THE EMPLOYMENT MANUAL.
THE DECISION OF THE ARBITRATOR SHALL BE FI-
NAL AND SHALL BAR ANY SUIT, ACTION, OR PRO-
CEEDING INSTITUTED IN ANY FEDERAL, STATE, OR
BEFORE ANY ADMINISTRATIVE TRIBUNAL. JUDG-
MENT ON ANY AWARD BY THE ARBITRATOR MAY BE
ENTERED IN ANY COURT OF COMPETENT JURISDIC-
TION.

On November 15, 1996, plaintiff's date of hire as a
permanent employee, she signed a one-page receipt
form. The following text appeared at the top of the page:

This Employment Manual will serve as a guide; it is not
always the final word. Individual circumstances may call
for individual attention.

Because the general business atmosphere of [defendant]
and economic conditions are always changing, the contents
of this Employment Manual may change at any time at the
discretion of [defendant]. No changes in any benefit, policy,
or rule will be made without due consideration of the
mutual advantages, disadvantages, benefits, and responsi-
bilities on you as an employee and on [defendant] as an
employer.

The receipt form then directs the employee to read six
bullet-pointed statements. The first five concern receipt
and understanding of the manual, at-will employment
(two provisions), confidentiality, and that defendant may
require new signatures if the manual has any changes.
The sixth bullet point concerns arbitration and specifi-
cally provides, "I understand that any dispute, matter, or
controversy as set forth in Section 4.07, shall be settled by
arbitration." The bottom of the form states, "The signed
original copy of this agreement must be given to your
supervisor to be filed in your personnel file."

Plaintiff raised the following issues on appeal: (1) whether the parties entered an agreement to arbitrate, (2) whether the language of the agreement bars claims over a year old, and (3) whether by operation of law the shortened period of limitations is invalid. The second and third issues are relevant because plaintiff filed her claim after the one-year period under the arbitration agreement, but before the three-year statutory period for her civil rights claim under MCL 600.5805(10).

A trial court's decision to grant or deny a motion for summary disposition under MCR 2.116(C)(7) is reviewed de novo. *Watts v Polaczyk*, 242 Mich App 600, 603; 619 NW2d 714 (2000). Whether an arbitration agreement exists and is enforceable is a question for the court that is also reviewed de novo. *Id.*

"[A]n arbitration provision is unenforceable if it is not a binding contract." *Heurtebise v Reliable Business Computers, Inc*, 452 Mich 405, 413; 550 NW2d 243 (1996) (opinion by CAVANAGH, J.). In *Heurtebise*, the Court held that the terms of the employment manual that the plaintiff signed, which included an arbitration provision, were unenforceable because the language of the manual demonstrated that defendant employer did not intend to be bound by the manual. *Id.* at 413-414. The opening statement of the manual in *Heurtebise* contained the following express disclaimer: "It is important to recognize and clarify that the policies specified herein do not create any employment or personal contract, express or implied . . . ." *Id.* at 413 (emphasis deleted from *Heurtebise*). The plaintiff signed a form acknowledging receipt of the manual and that she agreed to have its terms and policies bind her. *Id.* at 409.

The manual in this case differs in some important respects from the one in *Heurtebise*. Importantly, the

manual in the present case contains no express language stating that its terms are not intended to create an enforceable agreement. Although the manual states that it will not answer all questions, "[i]t provides answers concerning [defendant's] benefit programs, company policies and procedures, our responsibilities to you, and your responsibilities to [defendant]." A fair reading of the manual leads to the conclusion that the responsibilities intended are contractual. Additional language about what to expect bolsters the conclusion. The manual encourages employees to carefully read the manual, which "is designed to answer many of your questions about the practices and policies of [defendant], what you can expect from [defendant], and what [defendant] can expect from you."

The manual states that terms may change, but it notes measures to inform employees of the change, such as replacement pages and company postings. Furthermore, it never states that any changes made without notice will have retroactive effect. That silence, coupled with the manual's repeated references to the at-will nature of employment, led plaintiff to believe that defendant did not intend a contract and could have refused arbitration if she were the one demanding it instead. Defendant disagrees with plaintiff's legal interpretation and, relying on *Rushton v Meijer, Inc (On Remand)*, 225 Mich App 156; 570 NW2d 271 (1997), overruled on other grounds by *Rembert v Ryan's Family Steak Houses, Inc*, 235 Mich App 118 (1999), contends that the manual was an enforceable agreement.

We agree with defendant that reliance on *Rushton* is proper in this case. The Court's holding on the binding nature of the manual, unlike its holding invalidating the arbitration provision on public policy grounds, was not overturned by the conflict panel in *Rembert* and

applies to future cases. See *Rembert, supra.* The Court in *Rushton* held that the employer's reservation of the right to modify the manual and the at-will nature of employment did not render the manual unenforceable. *Rushton, supra* at 161-164. Specifically, this Court in *Rushton* provided:

> By its clear terms, [plaintiff and defendant] are both bound by [the manual] unless and until the employer chooses to change it. Even then, the employer cannot retroactively escape from its requirements. Any change can only take effect prospectively.
>
> * * *
>
> The fact that [the employer] could later change the agreement does not vitiate the fact that, as things currently stand, these parties are contractually bound. [*Id.* at 162-163.]

The holding in *Rushton* requires the same outcome in this case.

In *Rushton,* as in this case, there is an at-will employment relationship, a manual with contractual terms that included mandatory arbitration and the employer's exclusive right to prospectively alter the terms of the relationship, and the fact that the employer made no changes between the beginning and the end of the relationship. The parties in this case had a contract that included a detailed arbitration provision. The provision appeared in large bold-faced text. Finally, the manual's severability clause reflects the understanding that the terms of the manual are meant to be enforceable: "In the event that any provision in this Employment Manual is found unenforceable and invalid, the finding will not invalidate the entire Employment Manual, but only the subject provision." Underlying this language is the presumption that the manual

contains enforceable terms. This provision seeks to protect as many of those terms as possible in the event that some terms are invalidated. For all these reasons, the parties intended the manual, including the arbitration provision, to contractually bind them to certain employment terms.

Even if the manual itself does not create binding arbitration, which we find it does, defendant prevails because plaintiff signed the receipt form, which included a specific provision for arbitration. Specifically, the receipt form provided, "I understand that any dispute, matter, or controversy as set forth in Section 4.07, *shall* be settled by arbitration." (Emphasis added.) Admittedly, the top of the form refers to the manual as a guide that "is not always the final word," but the next paragraph references the "mutual . . . responsibilities" of the parties. Furthermore, the bottom of the form states, "The signed original copy of this *agreement* must be given to your supervisor to be filed in your personnel file." (Emphasis added.) While the manual and receipt form may leave some questions unanswered, arbitration is not one of them. The receipt form in plain and forceful language requires the settlement of all employment disputes by arbitration.

The circuit court in this case relied on *McAlindon v Clio Golf Course, Inc*, unpublished opinion per curiam of the Court of Appeals, issued November 9, 2001 (Docket No. 225236).[1] *McAlindon* distinguished *Heurtebise* in the following manner:

> [A]lthough the arbitration clause and other provisions are contained within the body of the employee handbook, defendant created a separate document containing the

[1] We find *McAlindon* persuasive, but note that unpublished opinions are not binding under the rule of stare decisis. MCR 7.215(C)(1); see also *Dyball v Lennox*, 260 Mich App 698, 705 n 1; 680 NW2d 522 (2004).

> provisions signed by plaintiff. The arbitration clause was made the subject of a specific agreement separate from the terms, conditions and policies of the handbook. This clearly indicates an intent by defendant to be bound by the arbitration provision, and plaintiff executed that agreement. [*McAlindon,* slip op at 2-3.]

There were three separate signature lines, one for each paragraph, on the form. *Id.* at 1. In contrast, there was only one signature line at the bottom of defendant's form beneath the six bullet points. This difference should in no way dilute the separate agreement in this case. One signature may indicate assent to many terms. Otherwise the vast majority of the terms of all contracts are invalid. What matters is whether the parties intended an agreement, not how formalistic that agreement was.

The only relevant difference between this case and *McAlindon* is that in this case the separate agreement incorporates the arbitration provision of the manual by reference and not by directly spelling out all the terms. Again, this distinction should make no difference. The receipt form clearly states that arbitration will settle all disputes. Section 4.07 appears in the manual in large bold text. Nothing about how the agreement was presented to plaintiff was misleading or confusing. Plaintiff could have easily read the receipt form in conjunction with the employment manual. Both documents straightforwardly described what to expect in terms of dispute resolution by arbitration. Even without reading the two in tandem, the receipt form on its face is an agreement to arbitrate subject to the details appearing in the employment manual. For these reasons, the receipt form, when read together with the employment manual, is an independent agreement requiring arbitration.

On review de novo, we find that the circuit court did not err in finding that the parties entered into an agreement to arbitrate claims.

Plaintiff also challenges the apparent one-year period of limitations under the arbitration agreement, which would bar her claim. She argues that the language of § 4.07, the arbitration provision, allows her to bring suit after one year. Section 4.07 provides in relevant part:

ANY DISPUTE, MATTER, OR CONTROVERSY IN-VOLVING CLAIMS FOR MONETARY DAMAGES AND/OR EMPLOYMENT RELATED MATTERS IN-CLUDING, BUT NOT LIMITED TO, ANY AND ALL CLAIMS RELATING TO TERMINATION OF EMPLOY-MENT AND DISCRIMINATION SHALL BE ARBI-TRATED PURSUANT TO THE RULES OF THE AMERI-CAN ARBITRATION ASSOCIATION. EITHER PARTY MUST DEMAND ARBITRATION WITHIN ONE YEAR AFTER THE CONTROVERSY ARISES .

Plaintiff argues that because the language above does not expressly prohibit filing suit after one year, she is free to do so. This interpretation is too strained. A reading of § 4.07 clearly leads to the conclusion that all claims must be arbitrated within a year: (1) all claims must be arbi-trated; (2) parties must bring all arbitrations within a year; and, therefore, (3) parties must bring all claims within a year. Under the agreement, arbitration subsumes all claims; thus, the one year period of limitations for arbitration must apply to all claims. Therefore, plaintiff should have demanded arbitration within one year of the sexual harassment she alleged led her to resign.

Plaintiff argues in the alternative that a one-year period of limitations is unreasonable. Typically, the applicable period of limitations for her sexual harass-ment claim is three years. MCL 600.5805(10). Parties may contract for a period of limitations shorter than the default statutory period as long as the shorter period is

reasonable. *Timko v Oakwood Custom Coating, Inc*, 244 Mich App 234, 239; 625 NW2d 101 (2001). "The period 'is reasonable if (1) the claimant has sufficient opportunity to investigate and file an action, (2) the time is not so short as to work a practical abrogation of the right of action, and (3) the action is not barred before the loss or damage can be ascertained.' " *Id.* at 239-240 (citations omitted).

A one-year period of limitations for plaintiff's sexual harassment claim is reasonable. By its very nature, sexual harassment is a claim of which a plaintiff must be aware at an early stage. In this case, plaintiff's awareness of the alleged misconduct of her supervisor and the failure of management to respond to her complaints led her to resign. The basis of the allegations in her complaint required no further investigation. Her claim stands in contrast to, for example, a personal injury action hinging on whether an injury amounts to a serious impairment of a body function, which is often only known several months after the initial injury. See *Rory v Continental Ins Co*, 262 Mich App 679, 685-686; 687 NW2d 304 (2004) (distinguishing *Timko*). Plaintiff has not demonstrated that the one-year period of limitations would somehow impose a hardship on her ability to bring her claim.

*Timko* held that a six-month contractual period of limitations for an age discrimination claim was reasonable. *Timko, supra* at 242 (stating that "no inherent unreasonableness accompanies a six-month period of limitation"). The Court noted that Michigan and federal laws have six-month or shorter periods of limitations for a variety of employment actions. *Id.* Plaintiff cites a federal case that *Timko* analyzed, which also found that a six-month period of limitations for an age discrimination claim or a handicapper claim is not

unreasonable. *Myers v ·Western-Southern Life Ins Co*, 849 F2d 259, 262 (CA 6, 1988). Because this case involves a similar civil rights claim and a longer contractual period of limitations than *Timko*, we can find no reasons why the limitations period is unreasonable.

Waiver of a statutory period of limitations for a civil rights claim is subject to heightened judicial scrutiny that asks if the waiver was knowing, intelligent, and voluntary. *Bobo v Thorn Apple Valley, Inc*, 459 Mich 892 (1998); *Herweyer v Clark Hwy Services, Inc*, 455 Mich 14, 19-21; 564 NW2d 857 (1997); *Myers, supra*. In this case, the language of the arbitration provision in the employment manual was clear and it appeared boldfaced, in capital letters, and in a larger font. The provision clearly provided that all claims must be brought within a year. Plaintiff signed both the employment manual and the receipt referencing the employment manual section, § 4.07, containing the time limitation. For these reasons, we find, on review de novo, that plaintiff knowingly, intelligently, and voluntary waived the statutory three-year period of limitations in which to file a claim.

Affirmed.