# STATE OF MICHIGAN

# COURT OF APPEALS

SUSAN LOWRY, CAROLYN GRITTINI, JACQUELYN FLECK, BARBARA ESSIAN, PAULA RASKIN, ROBERT GRITTINI, MARY J. POWER, AMY CALKINS, PAMELA GOLETZ, TAMMY NANNINI, CHRISTINE GONZALEZ, MAUREEN COLLIER, SARA MANN, SHERRIE MANIER, DEBORAH CULVER, MELISSA RIELI, VINCENT QUAGLIA, MARLANA WILLICK, KATHLEEN REISING, DIANNE SARKISSIAN, MARY LENGA, DORA DOLETZKY,

UNPUBLISHED
December 23, 2014

Plaintiffs-Appellants,

and

CLEMENT FARBER, NANCY KLEIN, MARY SECOT, and CAROLYN FUERST,

Plaintiffs,

v

No. 317516
Macomb Circuit Court
LC No. 2013-001961-CZ

LAUREN BIENENSTOCK & ASSOCIATES INC., LAUREN BIENENSTOCK, and SAMUEL BIENENSTOCK,

Defendants-Appellees.

Before: MURRAY, P.J., and SAAD and HOEKSTRA, JJ.

PER CURIAM.

In this case involving a dispute over the existence of an agreement to arbitrate, plaintiffs appeal as of right the trial court's order granting summary disposition to defendants under MCR

2.116(C)(7).[1]  Because there existed an enforceable agreement to arbitrate the parties' dispute and further discovery does not have a reasonable chance of aiding plaintiffs' position, we affirm the trial court's grant of summary disposition.

The basic facts in the present case are relatively straightforward.  Defendant Lauren Bienenstock & Associates, Inc. (LBA) is a court reporting firm owned by defendant Lauren Bienenstock.  Defendant Samuel Bienenstock is the firm's CEO.  Plaintiffs, who are all court reporters, contracted with defendants to provide court reporting services as independent contractors.  Undisputedly, plaintiffs each signed individual Independent Contractor Agreements (ICA) in relation to the services they provided to defendants.  These 22 agreements included identical terms.  These agreements applied to "any" services performed by plaintiffs, and the agreements included an integration clause, providing that the ICA "constitutes the entire agreement of the parties" and "supersedes any prior oral or written agreement."  The agreements also contained an arbitration clause, mandating arbitration of any dispute relating to the ICAs.  These agreements, while signed by plaintiffs, were not, however, signed by defendants.

In 2013, a dispute over compensation arose between the parties, but rather than pursue arbitration, plaintiffs filed the present suit in Macomb Circuit Court.  Defendants moved for summary disposition, which the trial court granted under MCR 2.116(C)(7) based on the existence of an agreement to arbitrate.  Plaintiffs now appeal as of right.

On appeal, plaintiffs first dispute the existence of a binding arbitration agreement.  Specifically, they maintain that no agreement exists because the written document was not executed by defendants.  They further assert that the agreement expressly required signatures by both parties before the agreement became effective.  In the alternative, they maintain that, because the document was unsigned, the controlling question is plaintiffs' intent to be bound in the absence of defendants' signature and, because they did not intend to be so bound, no contract exists.

We review de novo a trial court's decision to grant or deny a motion for summary disposition under MCR 2.116(C)(7).  *Hicks v EPI Printers, Inc*, 267 Mich App 79, 84; 702 NW2d 883 (2005).  Among other reasons, a motion under MCR 2.116(C)(7) is properly granted where there is "an agreement to arbitrate . . . ."  The existence of an arbitration agreement and the enforceability of its terms are judicial questions, which this Court reviews de novo.  *Hicks*, *id*.  Likewise, issues involving contract interpretation are reviewed de novo.  *Kloian v Domino's Pizza LLC*, 273 Mich App 449, 452; 733 NW2d 766 (2006).

To be enforceable, an arbitration provision must constitute part of a binding contract.  *Hicks*, 267 Mich App at 84.  Thus, the central issue in the present case is whether the ICAs, and their attendant arbitration provision, are enforceable given defendants' failure to execute the

---

[1] As used in this opinion, "plaintiffs" refers to the 22 plaintiffs-appellants involved in the current appeal.  Summary disposition was not granted by the trial court in regard to four additional plaintiffs, who are not parties to this appeal, because defendants could not produce arbitration agreements signed by those individuals.

agreements. To resolve this question, we consider whether the parties' entered into a binding contract.

In basic terms, contract formation requires both offer and acceptance. *Kloian*, 273 Mich App at 452. "An offer is defined as 'the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.'" *Id.* at 453 (quotation omitted). Acceptance of such an offer will suffice to create a contract provided that "the individual to whom an offer is extended manifests an intent to be bound by the offer, and all legal consequences flowing from the offer, through voluntarily undertaking some unequivocal act sufficient for that purpose." *Id.* at 453-454 (quotation omitted). Fundamentally, to establish a contract, "there must be 'mutual assent' to be bound— that is, the parties must have a 'meeting of the minds' on all the essential elements of the agreement." *Huntington Nat'l Bank v Daniel J Aronoff Living Trust*, 305 Mich App 496, __; __ NW2d __ (2014), slip op at 6. Whether there has been a meeting of the minds must be judged from objective evidence, i.e., from "the expressed words of the parties and their visible acts." *Id.* (quotation omitted).

When considering whether a contract has been formed, failure by one or both parties to sign a written agreement, and, in particular, to sign an arbitration agreement, is not necessarily fatal to a party's assertion that a contract was formed. *Ehresman v Bultynck & Co, PC*, 203 Mich App 350, 354; 511 NW2d 724 (1994). The reason for this is because the "object of a signature is to show mutuality or assent, but these facts may be shown in other ways." *Id.*, quoting 17 CJS, Contracts, § 62, pp 731-733. Consequently, "where mutuality of assent is established, written arbitration agreements do not have to be signed in order for the agreement to be binding." *Id.*

By way of example, in *Ehresman*, this Court noted that "an agreement need not be signed, provided it is accepted and acted on, or is delivered and acted on." *Id.* Because the plaintiff in *Ehresman* accepted delivery of the agreements and operated under their terms, this Court concluded he had clearly conveyed his assent to the written contracts. *Id.* Similarly, in *Green v Gallucci*, 169 Mich App 533, 538; 426 NW2d 693 (1988), this Court determined that a valid agreement existed where the written instrument had been signed by doctors but not the hospital at which they worked. This Court reasoned that "mutuality of assent between the hospital and doctors was established when the hospital offered the participation agreements to the doctors and the doctors accepted them by signing. At that moment, a binding contract was established." *Id.* at 538-539.

Applying this same reasoning to the present facts, defendants' failure to execute the ICAs does not mean a valid and enforceable contract was not formed. On the contrary, the undisputed facts demonstrate that defendants presented plaintiffs with an agreement, thereby plainly manifesting a willingness to enter into the bargain, and plaintiffs then signed that agreement.[2]

---

[2] Plaintiffs offer the unpersuasive argument on appeal that the ICAs cannot be viewed as offers of work by defendants because plaintiffs were already working for defendants under a previous oral agreement. This argument is without merit for the simple reason that "parties bound by an

-3-

Analogous to *Green*, the agreement became binding as soon as it was signed by plaintiffs. See also *Kloian*, 273 Mich App at 453-454. Further, plaintiffs returned those agreements to defendants. Defendants then kept those agreements, and the parties proceeded in keeping with their terms.[3] By accepting delivery of the written agreements and performing under their terms, defendants, as in *Ehresman*, demonstrated their intent to be bound. In short, despite defendants' failure to execute the agreement, the parties manifested an intent to be bound and this intent establishes the existence of a binding contract, including the agreement to arbitrate.

In contrast to this conclusion, plaintiffs present two basic arguments. First, plaintiffs maintain that the plain terms of the agreement required signatures from both parties before the agreement could become binding. Second, in the alternative, plaintiffs maintain that it was their subjective intent not to be bound in the absence of a signature from defendants.

Contract interpretation is required to ascertain whether the contract itself necessitated signatures from both parties before it became binding. "The goal of contract interpretation is to first determine, and then enforce, the intent of the parties based on the plain language of the agreement." *Harbor Park Mkt, Inc v Gronda*, 277 Mich App 126, 130; 743 NW2d 585 (2007). To accomplish this, contracts must be read "as a whole, giving harmonious effect, if possible, to each word and phrase." *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 50 n 11; 664 NW2d 776 (2003). "If the plain language is clear, there can be only one reasonable interpretation of its meaning and, therefore, only one meaning the parties could reasonable expect to apply." *Id.* at 61 (quotation omitted). Clear and unambiguous language must therefore be enforced as written. *Greenville Lafayette, LLC v Elgin State Bank*, 296 Mich App 284, 291; 818 NW2d 460 (2012). Consequently, courts may not read words into the plain language of a contract, *Northline*

agreement, be it written or oral, may *always* change the agreement by a mutual consent of those involved. Such a modification may be effected either orally or through a writing." *Rasch v Nat'l Steel Corp*, 22 Mich App 257, 260; 177 NW2d 428 (1970) (emphasis added). The writing in question in this case, which included new terms, including the arbitration agreement, was plainly intended to supersede an existing oral agreement, as clearly expressed in the contract's integration clause. The mere existence of a prior oral agreement did not preclude defendants from making plaintiffs a written offer or otherwise prevent the formation of a written agreement.

[3] Plaintiffs dispute whether the parties performed under the written agreement, specifically arguing that any performance that occurred was under the prior oral agreement. This argument is unavailing given plaintiffs' brought a breach of contract claim related to the written agreements and expressly stated in their complaint that they worked for defendants "as independent contractors pursuant to oral *and written agreements* . . . ." As a general proposition, a party is bound by its pleadings, *Angott v Chubb Group Ins*, 270 Mich App 465, 470; 717 NW2d 341 (2006), and the fair implication of plaintiffs' complaint is that there was in fact performance under the written agreements. While we view plaintiffs as bound by their acknowledgement that the parties performed under the written agreement, we note also that, aside from any performance under the written agreement, presentation of the agreement to plaintiffs by defendants was an offer, and it became a binding contract when signed by plaintiffs. See *Green*, 169 Mich App at 538; *Kloian*, 273 Mich App at 453-454. Consequently, regardless of subsequent performance, the contract was formed at the moment it was accepted by plaintiffs. See *Kloian*, 273 Mich App at 453-454.

*Excavating, Inc v Livingston Co*, 302 Mich App 621, 628; 839 NW2d 693 (2013), or rewrite its terms under the guise of interpretation, *Harbor Park Mkt, Inc*, 277 Mich App at 131.

The specific clauses relied upon by plaintiffs in suggesting the contract expressly required defendants' signature are Paragraphs 7 and 9 of the ICAs, which provide:

> 7. This Agreement constitutes the entire agreement of the parties and is intended as a complete agreement . . . . This Agreement supersedes any prior oral or written agreement. *No modification or amendment to this Agreement shall be binding upon the parties unless the same is in writing and signed by the respective parties thereto.*
>
> * * *
>
> 9. The individuals signing this Agreement represent and warrant in their individual capacities that they have the authority to execute this Agreement and that such *execution shall cause this Agreement to be the legal and binding obligation of such party.* [Emphasis added.]

Plaintiffs' maintain that paragraph 9 should be interpreted to mean that no contract may be formed without signatures by both parties, and that paragraph 7 serves to reinforce the necessity of both parties signing any written document in order to accomplish an agreement.

Contrary to the basic rules of contract interpretation, this reading by plaintiff adds terms not expressed in the contract's plain language and essentially rewrites the agreement between the parties. That is, while clearly paragraph 9 provides that execution shall cause the agreement to be binding on the signing party, it does not state that this is the *only* method by which the parties may manifest an intent to be bound by the ICA's terms or that neither party is bound if one party does not sign. In fact, plainly read, paragraph 9 merely reinforces the notion that plaintiffs bound themselves to the agreement by signing it because by executing the agreement it became the "legal and binding obligation of such party" without reference to signature by the other party. In other words, the clause says nothing to condition the agreement's enforceability on execution by both parties. Because such restrictions are not expressed in the contract's plain language, we will not add such terms to the agreement. See *Northline Excavating, Inc*, 302 Mich App at 628.

Paragraph 7 provides even less support for plaintiffs' position. This provision is largely irrelevant as it plainly deals only with "modification or amendment" to the ICAs. It does not provide that the written agreements in question are only binding if signed by both parties. If anything, the plain language of paragraph 7 underscores the fact that, had the parties intended to require signatures from both parties to effectuate the agreement in question, they could have plainly stated as much as they did in paragraph 7 with respect to amendments and modifications. In short, contrary to plaintiffs' argument, the plain language of the contract does not require signatures from both parties to establish a contract and we will not rewrite the agreements to add such requirements. See *Harbor Park Mkt, Inc*, 277 Mich App at 131.

As noted, plaintiffs also maintain that they did not have the subjective intent to be bound by the agreement in the absence of a signature from defendants. As factual support for this assertion, they provided the trial court with numerous affidavits from individual plaintiffs

attesting to their belief that they would not be bound to the contract if it was not signed by defendants. In terms of legal support, plaintiffs rely on *Wiegand v Tringali*, 22 Mich App 230, 233-234; 177 NW2d 435 (1970), wherein this Court stated:

> In cases where a writing which purports to evidence a contract between several named persons has been signed by less than all those named, *it is often found that the signers did not intend to become contractually bound until all the apparent parties sign and deliver the writing*. This is not, however, immutable doctrine. The parties may have entered into an oral contract which is effective without regard to whether the writing is signed. And those who do sign the writing may have intended to be bound by its terms even though less than all the named persons sign. Their intention governs. The intention of the parties is a fact to be decided upon the evidence, not by invoking our personal, professional or judicial experience. [Emphasis added.]

*Wiegand* also indicated that parol evidence may be admissible to establish the parties' intent, but this was only the case provided a material question of fact remains and where, in particular, the written agreement was "*silent* as to whether the persons who sign it intend to become legally obligated to each other before all persons named in it as parties have signed." *Id.* at 235-236 & n 7 (emphasis added).

On the facts of the present case, plaintiffs' reliance on *Wiegand* is misplaced and their subjective intent is irrelevant to the question of contract formation. Specifically, *Wiegand* is readily distinguishable because of the contract language involved in the present dispute.[4] Notably, in contrast to *Wiegand*, paragraph 9 of the ICAs expressly provided that: "The individuals signing this Agreement represent and warrant in their individual capacities that they have the authority to execute this Agreement and that *such execution shall cause this Agreement to be the legal and binding obligation of such party*." There is, as discussed above, no qualification on this statement and no requirement that defendants also sign the document in order to bind plaintiffs. Consequently, under the document's plain terms, plaintiffs manifested an objective intent to be bound the moment they executed the agreement, regardless of when, or whether, the document was also signed by defendants.

Because the agreement plainly dictates the moment at which it becomes binding on plaintiffs, it cannot be said to be "silent" on the issue of whether plaintiffs were bound in the absence of a signature from defendants. Consequently, plaintiffs are mistaken in their assertion that *Wiegand* permits them to introduce extrinsic evidence of their subjective intent or to pursue additional discovery on this issue. See *Wiegand*, 22 Mich App at 235 n 7. See also *UAW-GM Human Res Ctr v KSL Recreation Corp*, 228 Mich App 486, 492, 495; 579 NW2d 411 (1998) ("The conclusion that parol evidence is not admissible . . . is consistent with the general contract principles of honoring parties' agreements as expressed in their written contracts and not creating

---

[4] Apart from the readily apparent dissimilarities between *Wiegand* and the present case, we note also that, as a case decided in 1970, *Wiegand*—as compared to *Ehresman*—is not binding precedent on this Court. See MCR 7.215(J)(1).

ambiguities where none exist."). It is, in short, plaintiffs' objective act of signing the document—not plaintiffs' subjective intent—that is the relevant consideration for establishing whether there was a meeting of the minds. See *Kloian*, 273 Mich App at 454 ("A meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind." (quotation omitted)).

In sum, because the objective evidence demonstrated that the parties intended to be bound by the written agreements in question, those agreements constitute valid contracts which must be enforced as written. Given the arbitration clauses in the agreements, the trial court properly granted defendants' motion for summary disposition under MCR 2.116(C)(7).

Aside from the broad claim that defendants' failure to sign the agreement renders it nonbinding and unenforceable, plaintiffs raise three more specific arguments on appeal. First, plaintiffs maintain they may have claims which arose before the signing of the written agreements, and they allude to improper backdating of the agreements by defendants. Second, they argue claims by plaintiff Paula Raskin may be pursued because, although she signed an ICA, she subsequently broke with defendants and then returned years later, at which time she did not sign a second ICA. Third, plaintiffs contend that claims by plaintiff Sherrie Manier should survive defendants' motion for summary disposition because she wrote her own terms on the ICA, thereby rejecting the agreement and presenting defendants with a counteroffer they failed to accept.

Considering these specific claims in turn, we find that plaintiffs abandoned their unsupported argument that there may be wrongdoing by defendants that occurred before the written agreements were signed. Plaintiffs' appellate argument in this respect is not well-developed. Each ICA in question bears a date, clearly indicating when it became effective. If plaintiffs believe these dates were altered or that they have claims pre-dating the agreements, they have not adequately explained those issues. They have not addressed when the supposed claims arose, what they entail, or why they would not be subject to arbitration given that the ICA "supersedes any prior oral or written agreement" and expressly requires arbitration. Ultimately, their cursory argument, made without any citation to supporting legal authority or citation to the record, is abandoned and we decline to consider it further. See *Yee v Shiawassee Co Bd of Com'rs*, 251 Mich App 379, 406; 651 NW2d 756 (2002).

We likewise conclude that plaintiffs abandoned their argument in regard to Raskin. Plaintiffs maintain that Raskin worked for defendants and signed an ICA, but then ceased her work for defendants for some time and then later returned to work for defendants, at which time she did not sign a second ICA. Plaintiffs make these claims, however, without any citation to the record to support their factual contentions. Given this failure to provide any factual support for this claim, the issue may be deemed abandoned. See *id*. Apart from a lack of factual support, plaintiffs' argument also ignores that the fact that the ICAs do not contain an end date and expressly provide that the agreement governs "in the event Reporter performs *any* Services for clients . . . ." Given this broad language and the lack of an expiration date on the ICA, even assuming Raskin had a break in service at some point, plaintiffs' have not explained why the agreement would not govern when she again performed services for defendants. In short, plaintiffs' arguments regarding Raskin are poorly developed and appear without merit.

-7-

In regard to Manier's specific ICA, plaintiffs assert her claims are not subject to the arbitration agreement because she added three handwritten terms to the contract before returning it to defendants. On the facts of this case, we need not decide whether Manier's handwritten notations are the type of material change to a material term which constitutes a rejection of an offer and the proposition of a counteroffer. See *Zurcher v Herveat*, 238 Mich App 267, 296-297; 605 NW2d 329 (1999); 17A Am. Jur. 2d Contracts § 87 ("[I]mmaterial or minor differences or variances between the offer and acceptance do not prevent the formation of a contract."). Even if Manier's notations can be construed as a counteroffer, it is plain defendants accepted her terms when, upon receipt of her agreement, they proceeded in keeping with the agreement. See 17A Am Jur 2d Contracts § 90 ("If the original offeror, after receiving an alleged acceptance containing additional or altered conditions or terms, performs his or her part of the agreement or the new or altered conditions or terms in whole or in part, he or she shows acceptance . . . ."). In short, Manier, like Raskin and the other plaintiffs, had a binding agreement to arbitrate, and consequently, the trial court properly granted summary disposition under MCR 2.116(C)(7).

Lastly, on appeal, plaintiffs also challenge the trial court's grant of summary disposition as premature because discovery had not been completed. Relying on *Wiegand*, plaintiffs' main assertion is that a dispute remains over the existence of a binding arbitration agreement and that further discovery would uncover facts in support of plaintiffs' contention that no enforceable agreement exists. In particular, they claim that additional discovery was necessary regarding their intent to be bound in the absence of a signature from defendants. Apart from the issue of intent, plaintiffs also provide an undeveloped list of topics they would like to pursue during discovery.

"Generally, a motion for summary disposition is premature if granted before discovery on a disputed issue is complete." *Peterson Novelties, Inc v City of Berkley*, 259 Mich App 1, 24-25; 672 NW2d 351 (2003). "However, summary disposition may nevertheless be appropriate if further discovery does not stand a reasonable chance of uncovering factual support for the opposing party's position." *Id.* A party opposing summary disposition on the grounds that further discovery is required must "at least assert that a dispute does indeed exist and support that allegation by some independent evidence." *Bellows v Delaware McDonald's Corp*, 206 Mich App 555, 561; 522 NW2d 707 (1994). "Without any assertion regarding what facts are disputed or likely to be uncovered by further discovery, allegedly incomplete discovery will not bar summary disposition." *VanVorous v Burmeister*, 262 Mich App 467, 477; 687 NW2d 132 (2004).

Here, as discussed *supra*, the undisputed facts demonstrate the existence of a binding agreement to arbitrate and, consequently, additional discovery on the issue of plaintiffs' intent did not stand a reasonable chance of producing information favorable to plaintiffs' position. That is, as discussed repeatedly, defendants manifested an intent to be bound by presenting plaintiffs with an agreement, and that agreement became binding on both parties when signed by plaintiffs. See *Ehresman*, 203 Mich App at 354; *Green*, 169 Mich App at 538. In these circumstances, plaintiffs have not shown there existed a disputed issue on the question of contract formation and thus plaintiffs' subjective intent to be bound is irrelevant, particularly given plaintiffs' objective manifestation of an intent to be bound by signing the ICA which made the agreement binding on a signatory at the moment of execution. Cf. *Wiegand*, 22 Mich App at 235 n 7. Indeed, more broadly, for the reasons discussed *supra*, plaintiffs' reliance on *Wiegand*

is misplaced and it simply does not entitle them to discovery on the issue of intent. Overall, on the present record, given the clear existence of a binding arbitration agreement, plaintiffs' subjective intent to be bound is simply irrelevant and plaintiffs have not shown further discovery has a reasonable chance of uncovering factual support favorable to their position. See *Peterson Novelties, Inc*, 259 Mich App at 24-25.

Apart from the issue of intent, plaintiffs present a list of topics they wish to explore during discovery. The list provided is perfunctory at best. Plaintiffs fail to explain in any detail what facts they believe are likely to be uncovered and they do not support their contentions with any sort of independent evidence. See *VanVorous*, 262 Mich App at 477; *Bellows*, 206 Mich App at 561. Absent such development of their claimed need for discovery, plaintiffs have, in short, failed to show the necessity of additional discovery. See *VanVorous*, 262 Mich App at 477; *Bellows*, 206 Mich App at 561. Because additional discovery was not necessary on this record, the trial court's decision to grant summary disposition was not premature.

Affirmed. Defendants, having prevailed in full, may tax costs. MCR 7.219.

/s/ Christopher M. Murray
/s/ Henry William Saad
/s/ Joel P. Hoekstra