*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

BAN LILLEY,

        Plaintiff/Counterdefendant-
Appellant,

v

GL SOUTHFIELD, LLC, doing business as
SOUTHFIELD CHRYSLER DODGE JEEP RAM,
KEN THOMAS, CARLO IMPRODA, AL
FOSTER, RICHARD BLASKY, GARFF
AUTOMOTIVE GROUP, LLC, DAN
BOETTCHER, SEAN KING, and SCOTT
RIVARD,

        Defendants-Appellees,

and

ALLY FINANCIAL, INC., doing business as
ALLY FINANCIAL,

        Defendant/Counterplaintiff-
Appellee.

UNPUBLISHED
February 26, 2019

No. 340784
Oakland Circuit Court
LC No. 2016-154318-CZ

Before: GLEICHER, P.J., and K. F. KELLY and LETICA, JJ.

PER CURIAM.

Plaintiff, Ban Lilley, appeals by right the circuit court's order granting summary disposition to defendants Ally Financial, Inc., and Scott Rivard (the Ally defendants) on plaintiff's claim of tortious interference with business relationships. Plaintiff also appeals the circuit court's order granting summary disposition to defendants GL Southfield, LLC, Ken Thomas, Carlo Improda, Al Foster, Richard Blasky, Garff Automotive Group, LLC, Dan Boettcher, and Sean King (the Garff defendants) on the basis that plaintiff had signed an arbitration agreement. We affirm.

## I. FACTS

Plaintiff began working at GL Southfield as a car salesperson around June 2013. Plaintiff alleged that she was subjected to continuous sexual harassment and that, by December 2015, she had submitted two formal complaints. Ally Financial was the exclusive financier of cars on the GL Southfield lot. Kelly Doran, an auto finance fraud investigator for Ally Financial, testified that she reviewed a pattern of more than 40 fraudulent applications for financing from GL Southfield and four fraudulent deals between July and October 2015. Doran testified that she communicated the results of her investigation to certain Ally Financial employees, including senior account executive Scott Rivard. Plaintiff was discussed because she was the salesperson listed on the four fraudulent contract worksheets.

At a November 2015 meeting attended by Sean King, GL Southfield's regional finance director, Rivard expressed his belief that plaintiff was involved in the fraudulent deals. King testified that Rivard "said that he was concerned about doing—having—having car deals submitted and produced from [plaintiff], and that he felt uncomfortable having her in the store." King also testified that Rivard said he preferred that plaintiff not work in the dealership.

According to Ken Thomas, GL Southfield's general manger, GL Southfield's rules changed in January 2016 so that credit applications would no longer be completed over the phone. He learned that plaintiff had taken three credit applications over the phone, which had been called in to Ally Financial. Thomas asked plaintiff to verify the incomes on the applications, but he learned that the applications were instead "shopped around at a couple other dealerships," which was contrary to GL Southfield policy. Thomas stated that he decided to fire plaintiff over her handling of the applications, and King concurred. Plaintiff's employment was terminated in February 2016.

Former GL Southfield employee Chris Herrera testified that he was working at Fox Hills Chrysler Jeep when Rivard visited the dealership in March or April 2016. He recalled a conversation with Rivard and Fox Hill's manager, Brian Mejia. According to Herrera, Rivard said that "there is a lot of fraud up there [at GL Southfield], but now that [plaintiff] is gone, I think everything will be fine."

Brian Brewer also testified that he worked at Fox Hills and had previously worked at GL Southfield. Brewer testified that he had a conversation with Rivard in which Rivard "said that [plaintiff] had evidently done some things that she shouldn't have done and that he was going to do what he needed to do to look out for the interest of Ally Bank and the dealerships."

At her deposition, plaintiff testified about her attempts to find employment after being fired from GL Southfield and her subsequent terminations from other positions. Plaintiff testified that she learned from a manager at one dealership that "Ally Bank is after me," and that she could not remain employed there because Rivard had threatened to pull out of the dealership if her employment was not terminated.

In August 2016, plaintiff filed a complaint against the Garff and Ally defendants. Pertinent to this appeal, plaintiff alleged civil rights and consumer protection violations against the Garff defendants and tortious interference with business relationships against the Ally

defendants. The circuit court granted summary disposition under MCR 2.116(C)(7) to the Garff defendants on the basis that plaintiff had signed an arbitration agreement that covered her claims against them. The circuit court also granted summary disposition to the Ally defendants under MCR 2.116(C)(10) on the basis that plaintiff had not shown intentional interference by Rivard. Plaintiff now appeals.

## II. ARBITRATION AGREEMENT

Plaintiff argues that the circuit court erred when it determined that there was no question of fact regarding whether she signed an arbitration agreement with the Garff defendants. We disagree.

This Court reviews de novo the circuit court's decision on a motion for summary disposition under MCR 2.116(C)(7). *Altobelli v Hartmann*, 499 Mich 284, 294-295; 884 NW2d 537 (2016). The circuit court may grant summary disposition if a party's claim is barred because of an "agreement to arbitrate[.]" MCR 2.116(C)(7). This Court also reviews de novo whether an agreement to arbitrate exists and whether its terms are enforceable. *Hicks v EPI Printers, Inc*, 267 Mich App 79, 84; 702 NW2d 883 (2005). In deciding a motion under MCR 2.116(C)(7), the court must consider the pleadings as true unless other facts contradict them. *Dextrom v Wexford Co*, 287 Mich App 406, 428; 789 NW2d 211 (2010). It must consider the affidavits, pleadings, depositions, and other documentary evidence and determine whether a genuine issue of material fact exists. *Id*. at 429. If there are no questions of fact, whether the claim is barred as a matter of law, but "if a question of fact exists to the extent that factual development could provide a basis for recovery, dismissal is inappropriate." *Id*.

"Arbitration is a matter of contract. A party cannot be required to arbitrate an issue which he has not agreed to submit to arbitration." *Kaleva-Norman-Dickson Sch Dist No 6 v Kaleva-Norman-Dickson Sch Teachers' Ass'n*, 393 Mich 583, 587; 227 NW2d 500 (1975) (citation omitted). To be enforceable, an arbitration agreement must constitute a binding contract. *Hicks*, 267 Mich App at 84. "A valid contract requires mutual assent on all essential terms." *Eerdmans v Maki*, 226 Mich App 360, 364; 573 NW2d 329 (1997). While the existence of a signature shows mutual assent, the failure of one or both parties to sign an agreement does not necessarily mean that a contract has not been formed. *Ehresman v Bultynck & Co, PC*, 203 Mich App 350, 354; 511 NW2d 724 (1994).

The main thrust of plaintiff's argument is that, while she admitted at her deposition that she had signed an arbitration agreement dated October 6, 2014, an issue of fact exists because (1) she had previously averred that she did not sign any arbitration agreement, and (2) she later testified at the same deposition that she did not recall signing the agreement and the signature did not appear to be hers.

"It is well settled that a party may not create an issue of material fact merely by contradicting his or her own deposition testimony." *Kennedy v Great Atlantic & Pacific Tea Co*, 274 Mich App 710, 714; 737 NW2d 179 (2007). "[W]hen a party makes statements of fact in a 'clear, intelligent, unequivocal' manner, they should be considered as conclusively binding against him in absence of any explanation or modification, or of a showing of mistake or improvidence." *Barlow v John Crane-Houdaille, Inc*, 191 Mich App 244, 250; 477 NW2d 133

(1991), quoting *Gamet v Jenks*, 38 Mich App 719, 726; 197 NW2d 160 (1972).[1] Likewise, this Court has rejected the use of an expert's affidavit to create a genuine issue of material fact after that expert's later deposition testimony contradicted it. *Dykes v William Beaumont Hosp*, 246 Mich App 471, 481-482; 633 NW2d 440 (2001).

Here, plaintiff responded to an earlier summary disposition motion based on an electronically signed employment-at-will and arbitration agreement dated December 9, 2015, averring that she was never presented with an arbitration agreement and had never signed one.[2] At her subsequent deposition, presented with a copy of a hand-signed employment-at-will and arbitration agreement dated October 6, 2014, plaintiff answered yes when asked if her signature was on the last page. And after reviewing the October 2014 document, plaintiff also testified that she now recalled signing it, even though she did not recall doing so when she had signed her earlier affidavit.

A week later, during cross-examination by her own attorney, plaintiff testified that she did not recall how the October 2014 document was signed and now she did not think that it looked like her signature because she did not remember the document or recall signing it. As for her prior admission that she recalled the October 2014 document, plaintiff attributed her recall to an earlier conversation during which her attorney informed her about it. Plaintiff then again denied that she recalled signing or reviewing the October 2014 document. Plaintiff remained consistent that she had not signed or authorized anyone to sign the December 2015 electronic arbitration agreement for her; instead, she maintained she had been tricked into doing so.[3]

We conclude that the circuit court correctly determined that plaintiff was bound by her initial deposition testimony. After being shown the October 2014 arbitration agreement, plaintiff identified her signature thereon in a clear, direct, and unequivocal manner. She recalled signing it, seemingly attributing her earlier partially contradictory affidavit on this point to her failure to recall it. Plaintiff's subsequent statements to the contrary were not explanations or modifications, but direct contradictions of her earlier testimony, and plaintiff has made no showing of mistake or improvidence. We conclude that plaintiff's unequivocal initial statements at her deposition are binding and she did not create an issue of material fact by later contradicting herself at the same deposition.

---

[1] Plaintiff cites federal authority to argue that inconsistent deposition testimony may create a genuine issue of material fact. We decline to follow non-binding federal caselaw, *Rasheed v Chrysler Corp*, 445 Mich 109, 123 n 20; 517 NW2d 19 (1994), when controlling, well-established Michigan caselaw holds to the contrary. MCR 7.215(J)(1).

[2] The Garff defendants later withdrew their earlier motion for summary disposition based on the December 2015 electronically signed arbitration agreement. Thereafter, however, they located the signed October 2014 arbitration agreement and, again, filed for summary disposition.

[3] In the motion after which the circuit court granted summary disposition, the Garff defendants relied on plaintiff's testimony at her deposition that she had signed the October 2014 arbitration agreement. We conclude that the purported electronic agreement was not the basis of the circuit court's decision.

Plaintiff further argues that summary disposition was improper because the report of her handwriting expert, Michael N. Wakshull, stated that plaintiff's signature exemplars did not conform with the signature on the arbitration agreement. But no fair reading of Wakshull's report supports a conclusion that he opined that plaintiff did not sign the October 2014 arbitration agreement. Wakshull opined, "It is inconclusive whether the signature Q01 [the signature on the October 2014 arbitration agreement] was written by the same person who wrote the known [plaintiff] signatures." Wakshull defined inconclusive as meaning that he did not have a leaning one way or the other. He further stated that, although there were similarities in the signatures, he could not issue an opinion "in either the direction of identify or eliminate" without examining the original.[4] We reject plaintiff's argument because she mischaracterizes Wakshull's report.

We conclude that the circuit court did not err when it granted summary disposition to the Garff defendants on the basis that an arbitration agreement existed and barred plaintiff's claims.

## III. TORTIOUS INTERFERENCE

Next, plaintiff argues that the circuit court erred by granting the Ally defendants' motion for summary disposition under MCR 2.116(C)(10) because there was a genuine issue of material fact regarding whether Rivard maliciously interfered with her former and prospective employment. We conclude that plaintiff has not established the elements of tortious interference with a business relationship because she has not established that Rivard intentionally interfered with her employment.

This Court reviews de novo a trial court's decision to grant or deny a motion for summary disposition. *Kelsey v Lint*, 322 Mich App 364, 370; 912 NW2d 862 (2017). A trial court deciding a motion for summary disposition under this rule must consider the "pleadings, affidavits, depositions, admissions, and other admissible evidence submitted by the parties in the light most favorable to the nonmoving party." *Robins v Garg (On Remand)*, 276 Mich App 351, 361; 741 NW2d 49 (2007). "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id*.

In support of her claim of error, plaintiff argues that the circuit court erred by characterizing all or part of her proffered evidence as hearsay. "[D]isputed fact, or the lack of it, must be established by admissible evidence." *Marlo Beauty Supply, Inc v Farmers Ins Group of Cos*, 227 Mich App 309, 321; 575 NW2d 324 (1998). According to plaintiff, the trial court improperly determined that the testimony of five witnesses involved inadmissible hearsay and

---

[4] Although plaintiff contends there was an outstanding discovery request for review of the original document, "appellate review of the trial court's decision is limited to the evidence . . . presented at the time the motion was decided." *Gorman v American Honda Motor Co*, 302 Mich App 113, 120; 839 NW2d 223 (2013).

that this evidence was admissible as an admission of a party-opponent under MRE 801(d)(2). We disagree with plaintiff's characterization of the record. The circuit court ruled as follows:

> As for the alleged interference with other prospective employers, the only evidence proffered by Plaintiff is the testimony of Chris Herrera and Brian Brewer, who testified about conversations that allegedly occurred between Rivard and Brian Mejia, a former sales manager at Fox Hills. The evidence proffered by Plaintiff is inadmissible hearsay and is insufficient to defeat summary disposition.

This ruling clearly relates to only the testimonies of Herrera and Brewer, and only as it related to other prospective employers—it does not relate to the testimonies of three other witnesses who were involved in plaintiff's termination from GL Southfield. This Court need not consider an issue that was not the basis of the trial court's decision. *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 381; 689 NW2d 145 (2004). Because the circuit court did not rule in the way that plaintiff suggests, plaintiff has not demonstrated that the circuit court erred.

With respect to the circuit court's ruling regarding the admissibility of Herrera's and Brewer's testimonies, we agree that the trial court erred. The Michigan Rules of Evidence define hearsay as "a statement, other than the one made by the declarant while testifying at the trial or hearing, *offered in evidence to prove the truth of the matter asserted*." MRE 801(c) (emphasis added). In the relevant portions of their testimonies, Herrera and Brewer described conversations in which Rivard suggested that plaintiff had been involved in fraudulent activity while employed at GL Southfield. Plaintiff did not offer Herrera's and Brewer's testimonies to prove the truth of the matter asserted. That is, she did not rely on the evidence to prove that she was involved in fraudulent activity. Rather, she offered it to demonstrate that Rivard interfered with her employment by making the subject statements.[5] Because the evidence was not offered to prove the truth of the matter asserted, it was not hearsay. MRE 801(c); *Guerrero v Smith*, 280 Mich App 647, 660; 761 NW2d 723 (2008).

Even if Herrera's and Brewer's testimonies met the definitional requirements of hearsay, we would agree with plaintiff's contention that the statements during their conversations with Rivard would be admissible as admissions by a party-opponent. In pertinent part, MRE 801(d)(2) provides that a statement is not hearsay if it "is offered against a party and is . . . the party's own statement, in either an individual or a representative capacity . . . ." Herrera testified that Rivard told him that there was "a lot of fraud up there [at GL Southfield], but now that [plaintiff] is gone, I think everything will be fine." Herrera also testified that when he told Rivard that plaintiff was not the problem, Rivard said, "[W]ell, I think I've got it under control." Brewer testified that he had a conversation with Rivard during which Rivard "said that [plaintiff] had evidently done some things that she shouldn't have done and that he was going to do what he

---

[5] This evidence was pertinent to establishing the elements of plaintiff's case. Herrera testified that Mejia, who had hiring power at Fox Hills, was present when Herrera spoke to Rivard about plaintiff. Additionally, if Rivard was speaking to Herrera and Brewer about plaintiff in this fashion at different times, it leads to the reasonable inference that Rivard also spoke with Mejia about plaintiff.

needed to do to look out for the interest of Ally Bank and the dealerships." This testimony clearly involved Rivard's own statements, offered against Rivard. Therefore, even if the statements were offered to prove the truth of the matter asserted, they would be admissible as admissions by a party-opponent under MRE 801(d)(2). The circuit court erred by ruling to the contrary.

Nevertheless, even considering this evidence, plaintiff did not establish a genuine issue of material fact regarding whether Rivard intentionally interfered with her prospective employment. The parties' evidence established that Rivard's statements about plaintiff were motivated by business reasons.

> The elements of tortious interference with a business relationship are the existence of a valid business relationship or expectancy, knowledge of the relationship or expectancy on the part of the defendant, an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and resultant damage to the plaintiff. [*Baidee v Brighton Area Sch*, 265 Mich App 343, 365-366; 695 NW2d 521 (2005) (quotation marks and citations omitted).]

An act is wrongful per se when it cannot be justified under any circumstances. *Id*. at 367. The plaintiff must show affirmative acts by the defendant that evince a motive of improper interference. *Id*. If the defendant's actions were motivated by legitimate business reasons, no improper motive exists. *Id*.

Rivard testified that Doran brought to his attention an issue with fraudulent loan applications. There were more than 40 fraudulent applications and four accepted fraudulent deals, and plaintiff was the salesperson on the worksheet for each of the four deals. Both Rivard and an Ally Financial underwriter testified that they believed plaintiff was involved with the deals. King testified that when he spoke with Rivard, Rivard indicated that he felt plaintiff was connected with the fraudulent deals. As previously related in detail, Rivard later told Brewer and Herrera that plaintiff was involved in fraud. Accordingly, even if plaintiff was fired from GL Southfield as a result of Rivard's preferences,[6] and even if plaintiff was not hired at other dealerships because Rivard did not want plaintiff employed at dealerships in the Detroit area, the only record evidence shows that Rivard was acting to protect the interests of Ally Financial rather than acting for his own benefit.

Plaintiff also argues that Rivard could not have acted in Ally Financial's business interests if he acted recklessly by accusing plaintiff of fraud. A manufactured or false representation may provide evidence that a person intentionally interfered. See *Wood v Herndon & Herndon Investigations, Inc*, 186 Mich App 495, 503; 465 NW2d 5 (1990). However, because multiple people testified that plaintiff was related to four fraudulent deals as a salesperson, there is no evidence that Rivard's statements of his beliefs about plaintiff were manufactured or false.

---

[6] We note that an unresolved question of fact remained as to the reason for plaintiff's termination.

We conclude that the circuit court did not err when it granted summary disposition under MCR 2.116(C)(10) to the Ally defendants on the basis that plaintiff had not demonstrated a genuine issue of material fact on the issue of Rivard's intentional interference.

Affirmed.

/s/ Elizabeth L. Gleicher
/s/ Kirsten Frank Kelly
/s/ Anica Letica